[No. 36646.    Department Two.    February 13, 1964.]

WALTER D. BREAR et al., *Respondents*, v. WASHINGTON STATE
HIGHWAY COMMISSION et al., *Defendants*, WASHINGTON
ASPHALT COMPANY, *Appellant*.*

*Short & Cressman*, for appellant.

*Foster & Foster*, for respondents.

FINLEY, J.—Walter Brear, plaintiff-respondent, brought the present action to foreclose a statutory lien for the contract price of crushed rock he supplied to Washington Asphalt Company, defendant-appellant, for use in constructing the approaches to the Hood Canal bridge. The amount due Brear from Washington Asphalt on account of this bridge job (contract #6151) is not in dispute, and Brear has received payment on the amount due, less the sum of $2,934.16, claimed and withheld by Washington Asphalt Company as a setoff. The propriety of the alleged setoff, the principal issue in this appeal, involves overpayments allegedly made to Brear on previous contract work on the Krain-Veazie road (contract #6239), and concerns the

*Reported in 389 P. (2d) 276.

amount Brear was entitled to be paid for crushed rock for that job.

Thus, while the present lawsuit was brought to collect an amount claimed to be due for crushed rock delivered on the bridge job, the only issue or dispute concerns or relates to the previous and separate Krain-Veazie road job (contract #6239). It may be helpful in distinguishing between the contracts to keep in mind the diagrams set out below, following this paragraph. In each instance, or contract, the state of Washington was the "buyer," and contracted with a general contractor (a different one for each job), who engaged Washington Asphalt to do paving work. Washington Asphalt, in turn, engaged Brear to supply crushed rock for use in the paving operations; and Brear (also in each instance) ultimately assigned his interests (payments due) to the Olympia State Bank & Trust Company (additional plaintiff) for financing purposes.

| Road Contract #6239 | Bridge Contract #6151 |
|---|---|
| State of Washington | State of Washington |
| Bass Const. Company | John Hopkins Company |
| Washington Asphalt | Washington Asphalt |
| Walter D. Brear | Walter D. Brear |
| Olympia Bank & Trust Company | Olympia Bank & Trust Company |

On the Krain-Veazie road job (contract #6239), the payments by Washington Asphalt to Brear totaled $37,-889.80. At the time of payment, this figure was based upon preliminary estimates of the quantity of Brear's crushed rock which Washington Asphalt would use in the road. However, when the final determinations were made as to the amount used, and the state's final computations became available, Washington Asphalt claimed that it had made overpayments in the amount now claimed as a setoff, $2,934.16. Brear, on the other hand, claimed that an additional balance remained due of $648.24. All parties agree

that Brear was entitled to payment only for the amount of his crushed rock which Washington Asphalt actually used in the road construction; but they disagree as to how much crushed rock was used and as to how the amount should be determined. While Brear claims the right to rely upon the final quantities certified to the state by its resident engineer, Washington Asphalt denies that such figures accurately represent the *actual* amount of rock used in the road. The following items or amounts, representing crushed rock supplied by Brear, were certified to the state by its resident engineer and were the amounts on which the state based its payment to the general contractor, Bass Construction Company:

Item 17 ............... 10,308 tons
Item 18 ............... 9,187 tons

But, Washington Asphalt alleges that a lesser quantity of crushed rock was actually used, and that payment by Bass Construction to Washington Asphalt was based upon such lesser quantities as follows:

Item 17 .............. 8,997.7 tons
Item 18 .............. 7,715.0 tons

Washington Asphalt agrees that Brear was entitled to all payments which Washington Asphalt received from Bass Construction for Brear's crushed rock. But the total payments actually made by Washington Asphalt to Brear on Road Contract #6239 were in excess of this, coming within $600 of the larger, "certified," tonnage figures based upon the aforementioned preliminary estimates, made as the job progressed. To recoup from Brear the amount of the allegedly excessive payments, Washington Asphalt deducted this from the sum admittedly due Brear on the Bridge Contract #6151.

Bass and Washington Asphalt, in appellant's brief, explain the discrepancy between the official state figures and their method of computing payment to Brear in the following manner:

"Bass Construction Company had done extra work consisting of digging culverts, making manhole connections,

installing guideposts and doing shoulder work, for which it had made a claim with the King County resident engineer in the sum of $6,267.78. After negotiating this with the resident engineer, Bass Construction Company settled with the resident engineer on a sum of $5,842.20 for Bass' extra work. This sum of $5,842.20 in extra work was handled by the resident engineer's increasing on the final pay estimate quantities of rock as follows:

"To item 17 he added ........ 1,310 tons

"To item 18 he added ........ 1,472 tons

"Total ................... 2,782 tons

"This is the 2,782 tons which is in dispute in this litigation. Bass' contract price for this tonnage was $2.10. Therefore, this pay procedure netted him the $5,842.20 upon which he and the resident engineer had agreed for his extra work."

Both Bass and the King County resident engineer testified that the above indicated "conversion factor" was actually used by them; that the amount of "rock tonnage" so added to the figures supplied to the state in fact represented no rock, but rather work done by Bass; and that the only reason for using the conversion factor was to "cut red tape" in requesting additional payment for the extra work done by Bass. They stated that Brear should be paid for the *actual*, not the fictitious, amounts of crushed rock used, and they would determine this amount by *subtracting* the amount of the conversion factor from the totals certified to the state of Washington records.

The trial court, sitting without a jury, found, however, that Washington Asphalt was estopped to deny liability for the total amount of gravel reflected in the state's final figures. Judgment was entered for the plaintiffs (1) in the amount of the claimed setoff, $2,934.24, (2) for an additional sum of $531.24 (the additional amount necessary to bring the payment up to the state certified tonnages less $117 due the defendants for a certain bulldozer rental), and (3) for attorney's fees of $2,500. Washington Asphalt has appealed.

The basis of the estoppel found by the trial court was a letter from Mr. Wilcox, vice-president of Washington As-

phalt, to Walter A. Johnson, president of the Olympia State Bank & Trust Company, dated March 31, 1960, wherein Wilcox states:

"Payment made to you thus far on above contract is for rock in stockpile. The price of $1.20 per ton is for asphaltic concrete in place. At such time as the asphaltic concrete is laid in place, the rock will be paid for at $1.20 per ton, less the normal withholding of 15%; tonnage figures as set down by the State of Washington in their estimates to this firm will be the basis of our payment to you."

In its oral opinion the trial court stated:

"It would seem to the court that the letter of March 31, being plaintiff's Exhibit 5, is controlling in the matter. It says, 'tonnage figures as set down by the State of Washington in their estimates,' and then, of course, the words, 'to this firm,' are strongly emphasized by the defendants, but it does say 'by the State of Washington in their estimates,' and I feel that that is probably controlling. Certainly the plaintiff bank was led to believe that that would be the basis of payment. So I feel that that will control, and on that item that the plaintiff is entitled to recover."

■ We are unable to agree that, under the record here, any estoppel can be sustained. Even if the somewhat ambiguous statement in the letter could be construed as giving the bank the right to rely on the state estimates in determining the amount of the payments, it must also appear that the bank *actually* did rely to their detriment on the statement. *O'Connor v. Tesdale* (1949), 34 Wn. (2d) 259, 209 P. (2d) 274.

There is no evidence in the record which would indicate that the bank relied upon this letter to their detriment. The letter was not written until March 31, 1960, long after the bank made its advances to Brear. Equally important is the fact that, at the time of the letter, there existed no such state estimates as described in the letter upon which the bank could rely as to the ultimate quantities upon which payment would be made. Finally, the bank is unable to claim that it was misled as to the basis upon which payment would be made. The president of the bank, Mr. John-

son, testified at the trial that the bank fully understood that ultimate settlement between Brear and Washington Asphalt would, as always, be made on the basis of the amount which went into the road. The Washington Asphalt Company was free to prove, if it could, the actual amount of Brear's crushed rock which was used.

Concerning this "actual" amount, the testimony was conflicting. While the resident engineer and Bass testified that the conversion factor was used, thereby providing one method to use in determining amounts, Brear also testified that he placed crushed rock at the construction site in amounts well in excess of even the higher tonnages certified to the state and, when he later surveyed the site, all such crushed rock was gone. In the absence of conclusive evidence either way, the question is a factual one to be determined by the trier of fact—in this case the trial judge sitting without a jury.

There was, however, no finding of fact made by the trial court as to the amount of Brear's crushed rock used in the road. While findings of fact are not required where a case is terminated by a ruling on a point of law (*State ex rel. Washington Water Power Co. v. Superior Court* (1952), 41 Wn. (2d) 484, 250 P. (2d) 536), if a reversal on appeal of that particular matter of law renders the findings of fact insufficient, the case will be remanded with directions to clarify or amplify them. See *Garratt v. Dailey* (1955), 46 Wn. (2d) 197, 279 P. (2d) 1091.

The case should be reversed and remanded for clarification; *i.e.,* for the entry of such findings of fact as are necessary in accordance with the views expressed above.

It is so ordered.

OTT, C. J., WEAVER, and HAMILTON, JJ., and DAWSON, J. Pro Tem., concur.