[No. 37719. Department Two. November 4, 1965.]

WALTER D. BREAR et al., *Respondents,* v. WASHINGTON STATE HIGHWAY COMMISSION et al., *Defendants,* WASHINGTON ASPHALT COMPANY, *Appellant.*[*]

[*]Reported in 407 P.2d 423.

*Short, Cressman & Cable, Kenneth P. Short* and *William L. Hintze,* for appellant.

*Foster & Foster,* for respondents.

DONWORTH, J.—This is the second appeal in this case. On the first appeal, the judgment was reversed and the cause remanded for clarification, *i.e.* for the entry of findings of fact as to the amount of crushed rock furnished by respondent which was used by appellant in the construction of the Krain-Veazie Road (contract #6239).

Our decision on the first appeal is reported in *Brear v. State Highway Comm'n,* 63 Wn.2d 815, 389 P.2d 276 (1964), which should be read for an understanding of the factual background of this appeal.

Appellant in each appeal is Washington Asphalt Company, who was a subcontractor engaged by the prime contractor (Bass Construction Company) to do the paving work. Respondent Brear (referred to herein as respondent) had a contract with appellant to supply crushed rock for use in the paving operations.

When the cause came on for hearing in the trial court pursuant to our remand for clarification, no additional evidence or testimony was offered by either party. The parties argued, on the basis of the record previously made, the factual issue, to wit, the actual amount of crushed rock furnished by respondent which was used in the construction of the road.

The trial court's reasons for its ruling at the close of the second hearing are not included in the record. The court entered the following finding of fact (to which appellant assigns error):

III. That pursuant to the determination of the Supreme Court upon such remand, this court does hereby make the following Supplemental Finding of Fact to be inserted as subparagraph A of Finding of Fact V to read as follows:

A. That the preponderance of the credible evidence in this cause establishes that plaintiff Brear furnished in

excess of 36,106.7 tons of crushed mineral aggregate for such highway construction and that the actual amount of such crushed mineral aggregate used and going into construction of such Krain-Veazie Road Job was 30,922.7 tons at an agreed value of $1.20 per ton.

The trial court refused to enter appellant's proposed finding, to which refusal error is also assigned. It reads as follows:

II. That the amount of plaintiff Brear's crushed rock used in the road in question is as follows: Item 17— 8,997.7, Item 18—7,715, for which tonnage plaintiffs Brear and Olympia State Bank & Trust Company have been paid in full.

Appellant further has assigned error to the following conclusions of law (and to the entry of judgment in accordance therewith):

II. That the claim filed by plaintiff Brear 28 July 1961 with the Washington State Department of Highways was in all respects proper and in accordance with the limitations prescribed by law.

. . . .

IV. That plaintiffs are entitled to a reasonable attorneys' fee herein from defendants in the sum of $2,500.00 together with their costs in this Court in the sum of $26.20 and their costs on appeal in the sum of $74.75.

This project (contract #6239) was originated by the State Highway Commission, which awarded the contract to the prime contractor. In his brief, respondent states that the trial court was aware that it was "a federal aid secondary project" involving King County roads upon which payments were processed through the State Highway Commission rather than through the county engineer's office. However, the actual construction was supervised by the county engineer (of King County) who appointed R. L. Anderson as project inspector or resident engineer. He furnished the county engineer with information regarding the total tonnage of crushed rock used in the construction of the road.

The basis of the controversy between appellant and re-

spondent is described in our opinion on the prior appeal. See 63 Wn.2d at 816-818.

The trial court's judgment in that case, which was reviewed by this court, was based on the theory that appellant was estopped to deny liability for the total amount of crushed rock shown in the state's final estimate. As stated above, we reversed that judgment and remanded the cause for clarification (*i.e.* additional findings).

On the second hearing in the trial court (which was on the same record), the court entered the above-quoted finding of fact No. 3A to the effect that total crushed rock furnished by appellant was more than 36,106.7 tons, of which 30,922.7 went into the construction of the road. The judgment awarded respondent against appellant as the result of the second hearing was in the amount of $2,934.16 (which was the amount claimed and withheld by appellant as a set-off). The court also awarded respondent $2,500 as attorney fees.

Not having the benefit of the trial court's reasoning in arriving at its conclusion that judgment should be entered in favor of respondent (because it does not appear in the record), we rely on the statements in the briefs of the parties concerning the basis for the trial court's decision.

Both parties appear to agree that the court decided the case on the basis of public policy. Appellant states in its brief:

> The trial court apparently felt that the use of a "conversion factor," such as was used here to compensate the general contractor for unrelated extras, is against the public policy of this state and that, therefore, the State-certified figures must be accepted as accurately portraying the *actual* quantities of rock placed. Appellants are uncertain as to whether the trial court proceeded upon the theory that a contract against public policy will not be enforced or whether the theory was that they are in some manner estopped by public policy to deny the accuracy of the State figures.

Respondent referred to the trial court's reasoning in his brief as follows:

> The trial court quite properly reasoned that if the

rights of the public were to be protected, the solemn certification of tonnages could not be "converted" to provide funds for something other than the services or materials regularly certified for payment.

This public policy issue related to the conduct of the King County resident engineer and the prime contractor in causing to be certified to the State Highway Commission, as material furnished under items 17 and 18 of the contract, a total of 2,782 tons of crushed rock which never went into the road but was used by the prime contractor in performing extra work in connection with the project which was not called for by the plans and specifications. This amount of crushed rock is referred to as conversion tonnage. This procedure was used to compensate the prime contractor for extra work performed pursuant to orders of the resident engineer. He described it as a method of compensating the contractor for extras, which had been used on most of the jobs.

On the other hand, E. C. Simpson, a construction engineer for the State Highway Commission for 43 years, expressed a contrary opinion when asked if this procedure was a usual method of paying for extra work.

He testified, in answer to a comprehensive question which included what the evidence showed in this case, as follows:

A. Not to my knowledge. It is very irregular. We have procedures set up for paying items of this kind, either on a force account basis or an agreed price, provided for under standard specifications, and that is the procedure that all Engineers are instructed to follow.

R. K. Woods, assistant construction engineer for the State Highway Department, testified that the state had paid the prime contractor for crushed rock on the basis of the county engineer's final estimate.

Appellant argues that, under the evidence, the question of the propriety of the above-described method of compensating the prime contractor for extra work performed by it is not before the court.

It further vigorously contends that finding of fact No. 3A is not supported by any substantial evidence in the record,

because neither appellant nor respondent participated in the transaction between King County and the prime contractor regarding the conversion tonnage (assuming it to be irregular), and that neither of the parties to this action had control over or ratified that transaction.

With regard to the basis for finding of fact No. 3A, respondent stated in his brief:

> The court did not feel that the resident engineer, the contractor and the asphalt company could be heard to say that the actual amount of rock was something different than that which had been certified as the actual amount of rock in the road.

Respondent takes the position that appellant, by settling with the prime contractor, affirmed the transaction between the latter and the county engineer regarding the conversion tonnage.

Our remand on the first appeal was for the purpose of having the trial court find the amount of rock crushed by respondent pursuant to the contract between the parties to the present action which was used in the construction of the Krain-Veazie Road.

In our opinion, we said:

> The president of the bank, Mr. Johnson, testified at the trial that the bank fully understood that ultimate settlement between Brear and Washington Asphalt would, as always, be made on the basis of the amount which went into the road. The Washington Asphalt Company was free to prove, if it could, the actual amount of Brear's crushed rock which was used.
>
> Concerning this "actual" amount, the testimony was conflicting. While the resident engineer and Bass testified that the conversion factor was used, thereby providing one method to use in determining amounts, Brear also testified that he placed crushed rock at the construction site in amounts well in excess of even the higher tonnages certified to the state and, when he later surveyed the site, all such crushed rock was gone. In the absence of conclusive evidence either way, the question is a factual one to be determined by the trier of fact—in this case the trial judge sitting without a jury. *Brear v. State Highway Comm'n,* 63 Wn.2d 815, 819, 389 P.2d 276 (1964).

It is clear that we directed the trial court to find the *actual* amount of respondent's crushed rock which went into the Krain-Veazie Road.

However, in finding No. 3A, the court found that the amount "used and going into the construction of" the road was 30,922.7 tons, which is the tonnage certified to the state. This figure included the 2,782 "conversion" tons certified by the resident engineer in order to pay the prime contractor for extra work performed in the manner described above. This "conversion tonnage" clearly did *not* go into the paving of the road. The testimony is undisputed.

In our opinion, the trial court was in error in making this finding. The trial court was directed to make a finding as to the actual amount of crushed rock used in the paving—which necessarily excludes any "conversion tonnage."

The inclusion of this conversion tonnage was apparently due to the trial court's ruling that the amount of crushed rock certified to the State Highway Commission by the county engineer as having been placed in the road is conclusive upon appellant. As pointed out above, the present controversy is between appellant and respondent, who had a contract providing that appellant would pay respondent for crushed rock furnished by respondent and used in the paving of the road. Neither the county engineer nor the prime contractor was acting for appellant or for appellant's benefit.

We regret that it appears unavoidable that this case must be again remanded to the trial court for the purpose of making a finding of fact as to the amount of crushed rock which respondent furnished to appellant pursuant to *their* contract which was actually used in the paving of the road. In so doing, the trial court must disregard the possible violations of public policy with respect to the use of conversion tonnage by the county engineer and the prime contractor, since appellant was not a party to such transactions, nor did appellant profit from them. Furthermore, appellant should not be charged for the crushed rock which may have been used by third persons. Appellant should not be penalized for the behavior of third parties. Appellant

should be liable only for rock supplied by respondent which was actually used in the paving of the road, for that is the total extent of appellant's contractual obligation.

If the trial court finds, from the evidence in the case, that appellant has overpaid respondent to the extent alleged in the counterclaim for all crushed rock furnished to appellant and actually used in the paving of the road under the Krain-Veazie contract, it shall dismiss the action of respondent because the set-off will have been established. If, on the other hand, the court shall find, from such evidence, that appellant has not overpaid respondent for such crushed rock, it shall enter judgment for respondent to the extent that it finds the set-off not justified.

With respect to the allowance of the sum of $2,500 to respondent as attorney fees under RCW 39.08.030, this action was originally instituted by respondent to foreclose a statutory lien for the contract price for crushed rock furnished to appellant in connection with the construction of the approaches to the Hood Canal bridge, as pointed out in our decision on the first appeal. In that proceeding, appellant claimed and withheld as a set-off the sum of $2,934.16, which was alleged to be an overpayment made to respondent on the Krain-Veazie contract. This item is the one involved in the present action for which the trial court granted judgment to respondent.

In the event that upon the further remand of this case the trial court should find that respondent has been paid in full for all crushed rock actually placed in the road and should dismiss the action, no allowance for attorney fees can be made to respondent.

On the other hand, if the trial court should find otherwise and grant judgment for respondent, it is respondent's contention that he is entitled to an allowance for attorney fees because the rule stated in *Halleran v. Sander,* 163 Wash. 619, 1 P.2d 847 (1931), is applicable. Appellant argues that, although the action was originally brought as a lien foreclosure action under RCW 39.08.030, arising out of the Hood Canal bridge job, it was later converted by the parties into a controversy over the Krain-Veazie Road job. We believe

that appellant's position is correct in this case because of the peculiar facts of this case. The original foreclosure action was settled as to the State of Washington, the prime contractor on the Hood Canal bridge job, and the surety on its bond by stipulation of the parties. The state was dismissed as a party defendant. Appellant asserted an overpayment to respondent on the road job and claimed its right of set-off so that the action was no longer a statutory lien foreclosure against the prime contractor and the surety on his bond in connection with the Hood Canal bridge job.

■ Respondent insists that appellant should not be permitted to change the nature of the action by the interjection of an affirmative defense in the nature of a confession and avoidance, and thereby escape the statutory provision for attorney fees. If the allowance for attorney fees were made to depend solely on the procedural aspects of the case, we would agree. However, we believe that the cases decided in the past, which are pertinent to the statutory allowance for attorney fees under RCW 39.08.030, indicate that the test is not procedural but substantive; that is, was there a dispute in the case in which surety had a sufficient adverse interest that the suit might be continued at the behest of the surety to the disadvantage of the opposing party?

■ The purpose of statutes providing for attorney fees is to attempt to equalize the ability and willingness to litigate when one party may have much stronger motives and greater financial ability to litigate than the other parties to the action. Corporate sureties may desire to litigate certain issues for reasons beyond the potential losses involved in the particular case before the court because the contract provisions and procedures may become very important with regard to other potential claims. This is much less likely to be true of disputed claims between contractors and suppliers. There is no statutory provision for attorney fees in such suits and none can be recovered unless such have been provided for by the contract between the parties. It is clear from the facts in this case that the suit was made necessary by a dispute over a separate contract—the Krain-

Veazie Road project—in which dispute the surety had *no* interest in the issues.

In *Halleran v. Sander, supra,* which is relied on by respondent, this court held that a defendant could counterclaim against a surety's bond, and, hence, change the nature of a suit from one of a claim by the prime contractor against various interpleaded defendant subcontractors and suppliers into one of statutory lien foreclosure against the prime contractor and his surety. This case was distinguished from an earlier case, with the following discussion which occurs in *Halleran v. Sander,* at 163 Wash. 621-22:

> While these respondents did not commence the litigation, their respective cross-complaints for judgments against the surety are equivalent to that course, and are clearly within the meaning of the statute providing for attorney's fees. Counsel for appellants cite the case of *Maryland Casualty Co. v. Washington National Bank,* 92 Wash. 497, 159 Pac. 689. That case is not in point. It was brought by the surety for the benefit of creditors, including lien claimants, to preserve a fund derived from the performance of public work, and to recover from a bank to whom a part of the contract funds derived from the public work had been improperly paid. Upon referring to the matter of the claim of lien creditors for attorney's fees, it was said that the action was not one against the surety within the intendment of the statute allowing attorney's fees.
>
> "True," said the court, "the surety here must respond to them in any judgment in the accounting invoked, but that is a consequence incidental. So far from being sued, the surety has brought an action to preserve their fund, a suit really to help them and with no controversy against them."

In the case presently before this court, the surety may have to respond if Washington Asphalt's set-off is not allowed, assuming that Washington Asphalt does satisfy the Hood Canal bridge contract judgment against it, but, as the court said in the passage just quoted, that consequence is incidental, if true. The surety's presence in this case gives it no interest in the issues that were tried in the case, which are concerned only with the Krain-Veazie Road contract with which the surety has no connection whatsoever.

Under these circumstances, we hold that the present action does not come within the provisions of RCW 39.08.030 and, therefore, there is no statutory authority for the allowance of attorney fees in the case at bar.

The trial court's judgment is hereby reversed, and the case is remanded for the determination of the factual questions discussed above. Costs on this appeal will abide the result of the case on remand.

ROSELLINI, C. J., FINLEY and WEAVER, JJ., and BARNETT, J. Pro Tem., concur.