[No. 44629. En Banc. March 23, 1978.]

LAKESIDE PUMP & EQUIPMENT, INC., *Respondent,* v. AUSTIN CONSTRUCTION COMPANY, *Appellant.*

*Perkins, Coie, Stone, Olsen & Williams,* by *Richard S. Twiss, M. Margaret McKeown,* and *Lee E. Miller,* for appellant.

*Barokas & Martin,* by *Dennis J. Perkins,* for respondent.

HICKS, J.—The principal question on this appeal is whether a contract was created between the parties for the furnishing of two pump stations.

Respondent, Lakeside Pump and Equipment, Inc. (Lakeside), supplied an oral quotation to furnish two pump stations to appellant, Austin Construction Company (Austin). Whether this bid was for Lakeside's standard station or one which met certain specifications was the subject of dispute at trial and provides the focus on this appeal. Austin incorporated the oral quotation in its overall bid on a sewer

project in Pierce County and sent Lakeside a purchase order for two pump stations meeting project specifications. The order was conditioned on Austin's obtaining the contract for the project.

Austin was awarded the contract and notified Lakeside that the order was in effect. After considerable fruitless effort to get the project engineer to modify certain of the specifications, Lakeside refused to supply the pump stations to Austin. Because of Lakeside's refusal, Austin was put to markedly greater expense in completing the contract.

Lakeside did furnish several pumps ordered by Austin. Lakeside was paid for two of those pumps but it did not receive payment for others which Austin used in constructing the pump stations which Lakeside refused to supply. After a period of time had elapsed and Austin had failed to pay for all of the pumps, Lakeside declined to perform certain warranty repairs and provide performance tests for the pumps it had furnished. Lakeside sued Austin for the price of those pumps for which it had not been paid, plus interest. Austin claimed offset for warranty repairs and performance tests and counterclaimed for its additional expenses in constructing the pump stations. At trial Austin moved to amend its counterclaim to include profits of 8 percent of the costs incurred. That motion was denied.

The trial court found for Lakeside on its complaint for payment for the pumps, plus interest, and against Austin on its counterclaim for the extra cost of constructing the pump stations. The ruling on the counterclaim was based on the court's determination that no contract was created between the parties. The court also found for Austin on its claim for warranty repairs and performance tests. Judgment was entered accordingly.

Austin appeals only from that part of the judgment determining that no contract existed between the parties. It also appeals from the denial of its motion to amend its counterclaim. Lakeside cross–appeals from that portion of the judgment in favor of Austin. The issue raised on appeal was certified to this court by the Court of Appeals.

As to the existence of a valid contract between the parties, Austin contends that Lakeside's oral bid constituted an offer which it accepted, (1) by its purchase order, or (2) earlier, when it incorporated Lakeside's bid in the overall bid submitted to Pierce County. It argues that Lakeside's bid was for stations which met the specifications. Lakeside contends that its oral quotation to Austin was not an offer in the contractual sense or, if the court should find that an offer had been made, that the purchase order submitted by Austin was not a valid acceptance of that offer. Lakeside asserts the purchase order materially altered its offer by including a requirement that the pump stations "be complete and in full compliance with the plans and specifications, University Place North." In Lakeside's view, the purchase order was no more than a counteroffer, which it never accepted.

In making their respective contentions, both parties rely heavily on factual arguments, quoting frequently from the trial testimony as to the content of the bid. Our inquiry, however, is narrowly limited by the failure of either party to assign error to the trial court's findings of fact. Since no challenge was made to any finding of fact by either party, the trial court's findings become the established facts of the case. *Goodman v. Bethel School Dist. 403*, 84 Wn.2d 120, 524 P.2d 918 (1974). We must decide only whether the challenged conclusions of law are supported by the court's findings of fact. *Goodman v. Bethel School Dist. 403, supra;* ROA I-43.

Austin challenges the following conclusions of law:

2. The purchase order prepared by defendant Austin Construction Company and submitted to plaintiff for the two prefabricated pumping stations constituted an offer by defendant Austin Construction Company to purchase said pumping stations.

3. The purchase order referred to in Conclusions of Law Paragraph II was not accepted by plaintiff, either expressly or impliedly.

4. Plaintiff's conduct following receipt of the purchase order referred to in Conclusions of Law Paragraph II was

inconsistent with and did not recognize the existence of a contract to supply defendant Austin Construction Company with pump stations which would comply with the project specification.

5. *There was no contract between plaintiff and defendant* Austin Construction Company for the furnishing by plaintiff of prefabricated pumping stations which would comply with the specifications as prepared by Kennedy Engineers.

(Italics ours.)

In this instance, neither the findings of fact nor memorandum decision[1] is a model of support for these conclusions of law. Counsel can do little about the memorandum decision, but it would seem that each should offer the court such proposed findings of fact as will support the conclusions of law and judgment for which each contends.

The relevant unchallenged findings of fact read as follows:

10. The President of plaintiff met with the local representative of Kennedy Engineers sometime before the bid submittal deadline of the University Place project to discuss the specifications for the project. Following and as a result of that meeting, the local representative of Kennedy Engineers suggested to his people at Kennedy Engineers' California headquarters that changes be made in the final specifications for the University Place project so that the basic pump station manufactured by plaintiff could comply therewith.

11. The final plans and specifications prepared by Kennedy Engineers subsequently were not altered to allow plaintiff's basic pump station design, including electrical control systems, to comply therewith.

. . .

13. After submitting its bid on the University Place project, but prior to award, defendant Austin Construction Company sent plaintiff a purchase order for two prefabricated pump stations, which purchase order

---

[1]In determining whether findings of fact support conclusions of law, we may consider the trial court's oral opinion or memorandum opinion in the case to supplement or amplify, though not to contradict, the findings of fact as entered. *Rutter v. Rutter,* 59 Wn.2d 781, 784, 370 P.2d 862 (1962) and cases therein cited.

included the requirement that the pump stations comply with the specifications for the project as written by Kennedy Engineers. On the same date, Austin Construction Company sent plaintiff a purchase order for two separate Cornell pumps.

These findings are amplified by the memorandum decision, where the court said in pertinent part:

> Mr. Spaulding, who was in charge of the bid for defendant, Austin, received a verbal quotation from the plaintiff, which he included in the makeup of his total bid, and *the testimony is in serious conflict as to what the verbal quotation encompassed. . . .*
>
> The testimony is also in conflict as to the reaction of the plaintiff [Lakeside] upon receipt of the purchase orders calling for compliance with the plans and specifications.

(Italics ours.) At another point in the memorandum decision, the court said:

> Mr. Spaulding, who prepared the bid and was in charge of the business end of the dealings for the defendant Austin Construction Company, testified that the purchase order directed to the plaintiff was "an opportunity for Lakeside to make a submission."

and at another point:

> The court finds that the purchase order of the defendant Austin to the plaintiff was not a contract when submitted, but merely an offer to buy. The court further finds that it was not accepted by the plaintiff, either expressly or by shipment of goods, thus constituting such a contract. The court further finds that plaintiff's course of conduct does not recognize the existence of such a contract, since it was simply a continuance of its course of conduct which commenced in late 1971. In fact, plaintiff's course of conduct after the purchase order was contrary to and inconsistent with a recognition of contract, since such purchase order was only for a product which complied with the plans and specifications for the pump stations. *There was clearly never a meeting of the minds between the parties on the products and service to be provided.* Plaintiff never had such a product to sell.

(Italics ours.)

The conclusion that no contract was created is supported by the findings of fact as amplified by these excerpts from the memorandum opinion. After hearing all the testimony, the trial court found that the minds of the parties never met.

██ Austin's argument that a contract was created ignores the requirement that the parties mutually agree to the essential terms of the contract. *West Coast Airlines, Inc. v. Miner's Aircraft & Engine Serv., Inc.*, 66 Wn.2d 513, 403 P.2d 833 (1965).

> Offer and acceptance are the tools by which courts and contract negotiators arrive at the illusive contractual concept of "a meeting of the minds." The query is uniformly: Did the parties agree upon the same thing at the same time?

*Merritt–Chapman & Scott Corp. v. Gunderson Bros. Eng'r Corp.*, 305 F.2d 659, 662 (9th Cir. 1962).

At oral argument, Austin contended that the requirements of a meeting of the minds was eliminated by the Uniform Commercial Code, RCW Title 62A. While the UCC liberalized some of the rules of contract formation, it did not affect the basic requirement that there be an agreement or a meeting of the minds between the parties. RCW 62A.2–204(1); *Euclid Eng'r Corp. v. Illinois Power Co.*, 79 Ill. App. 2d 145, 223 N.E.2d 409 (1967); 3 Bender, *Sales and Bulk Transfers Under UCC* § 3.05. It was Austin's failure to demonstrate such agreement between the parties which resulted in the court's determination that no contract was created.

Because of the limited review we can make of the record in this case, we feel compelled to support the trial court in its conclusion that no contract between the parties was formulated. For that reason, we need not consider Austin's assignment of error to the denial of its motion to amend its prayer for damages.

Lakeside cross–appeals from the portion of the judgment in favor of Austin and specifically challenges the entry of conclusions of law as follows:

7. Plaintiff was obligated by the terms of its agreement with defendant Austin Construction Company to perform warranty repairs and provide performance tests for those pumps which plaintiff did provide. Defendant Austin Construction Company is therefore entitled to recovery from plaintiff as a setoff against the amounts set forth in paragraph VIII hereof in the sum of $929.49 for warranty repairs and $390 for performance tests, with interest at the rate of 6% per annum from October 1, 1973.

8. Plaintiff is not entitled to an award of attorneys fees under RCW 39.08.030.

Unchallenged finding of fact No. 20 provides as follows:

Defendant Austin Construction Company paid plaintiff for the two Cornell pumps referred to in paragraph XIII, but plaintiff failed to perform certain warranty work and to provide certified non–witnessed test results for those pumps, and for certain of the other pumps supplied by plaintiff.

Supplementing that finding of fact, the court's memorandum decision provided in part:

While it is understandable that the plaintiff was unwilling to expend further effort or time in repair or furnishing of information pertaining thereto, because they had not been paid, these items were still called for under the terms of the specifications for whomever furnished the pumps.

Under the circumstances of this case, the foregoing finding of fact, as supplemented by the trial court's memorandum decision, supports conclusion of law No. 7.

■ Lakeside argues that, having prevailed in its action for the price of pumps supplied to Austin, it is entitled to an attorney's fee under RCW 39.08.030. That statute allows for such recovery in a suit against a surety on a contractor's bond.[2] The trial court denied Lakeside's claim on the authority of *Brear v. State Highway Comm'n*, 67 Wn.2d 308, 316, 407 P.2d 423 (1965).

---

[2] In this case, the bonding company appeared but did not answer on its own behalf because a retained percentage of the contract price was held by the court and available for payment of the judgment.

Attorney's fees under RCW 39.08.030 are allowed only when a surety has such an adverse interest in a case that it might use its superior financial position to continue the suit to the disadvantage of the opposing party. *Brear v. State Highway Comm'n, supra* at 316. Since that is not the case here, the trial court did not err in denying Lakeside an attorney's fee in this matter.

The judgment of the trial court is affirmed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.

Petition for rehearing denied May 9, 1978.