[No. 51156-4-I. Division One. July 21, 2003.]

U.S. FILTER DISTRIBUTION GROUP, INC., *Appellant*, v. KATSPAN, INC., ET AL., *Defendants*, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, *Respondent*.

*Douglas R. Hookland* (of *Scott Hookland, L.L.P.*), for appellant.

*Robert L. Olson* and *Andrew W. Torrance* (of *Schiffrin Olson Schlemlein & Hopkins*), for respondent.

COLEMAN, J. — A supplier of materials to an insolvent public works contractor can recover attorney fees against the contractor's surety if the supplier sues to enforce the bond and the surety and supplier have adverse interests in the dispute. U.S. Filter Distribution Group, Inc., supplied materials to a public works contractor. When the contractor became insolvent, U.S. Filter sought reimbursement from the contractor's surety, Travelers Casualty and Surety Co. of America. Travelers immediately offered to pay, but only if U.S. Filter signed a release that assigned its claims against the contractor to Travelers and agreed to honor all warranties on the parts it supplied to the contractor. U.S. Filter refused to sign the release unless those provisions were stricken. Travelers refused to strike the provisions, and U.S. Filter eventually sued to enforce the bond.

We hold that U.S. Filter is entitled to attorney fees. Travelers' insistence that U.S. Filter sign the release provisions, which U.S. Filter had no duty to sign, created an adverse interest between the parties, triggering the attorney fee provision of the statute. U.S. Filter is not, however, entitled to interest at the rate specified in its contract with Katspan, Inc.; the trial court properly concluded that the statutory interest rate controls. Further, although Travelers deposited the principal amount and some costs with the court after U.S. Filter sued, that tender did not include U.S. Filter's reasonable attorney fees. Travelers, therefore, is not excused from paying the fees U.S. Filter has accrued since then. We reverse and remand for determination of U.S. Filter's reasonable attorney fees, including fees for this appeal.

## FACTS

Katspan, Inc. contracted with the city of Kent to act as the prime contractor on a public works project. As required by statute, Katspan purchased a surety bond from Travelers to secure Katspan's performance. The bond required that Travelers pay all "materialmen" on the project in the event Katspan did not.

Appellant U.S. Filter supplied construction materials to Katspan for the project. Katspan became insolvent before it was able to pay U.S. Filter for all of the materials. U.S. Filter sought to recover Katspan's debt from Travelers, the surety that issued the bond. Travelers offered to pay the claim and sent U.S. Filter a standard form release to sign.

On the advice of its attorney, U.S. Filter refused to sign the form unless Travelers deleted the following two provisions:

> In further consideration of aforesaid payment, the undersigned hereby assigns, transfers and sets over to said Surety its above-mentioned claim or cause of action against said contractor together with all of its rights, title and interest in and to said claim, or cause of action; and the undersigned constitutes said assignee its true, lawful and irrevocable attorney to demand receipt for and enforce payment of the said claim, and at its own expense to sue for the said sum so assigned either in the name of the undersigned or in its own name.

> As a further inducement to Surety for making payment at this time, undersigned hereby agrees that all guarantees and warranties required under the terms of the aforesaid contract pertaining to the work, labor and materials furnished by the undersigned shall remain in full force and effect in accordance with their terms which, however, shall not be extended nor enlarged hereby.[1]

U.S. Filter's attorney indicated in a fax that U.S. Filter would not sign the release as written because Katspan owed U.S. Filter "substantial other sums" and he believed a partial assignment would result in "improperly splitting a cause of action." He also stated that U.S. Filter "disclaims all guarantees and warranties related to its materials, and thus there are no guarantees or warranties to affirm. Furthermore, U.S. Filter has no obligation to either assign claims or incur any obligations to benefit the surety." Travelers responded with a letter explaining its belief that

---

[1] Although the actual release used in this case is not included in the record, the release from the Renton project is included in the clerk's papers. The parties agree that the quoted portions of the releases were identical.

the provisions merely reaffirmed rights existing outside the agreement and could not prejudice U.S. Filter's ability to recover other debts from Katspan in the future.

Travelers had agreed to delete the assignment and warranty provisions from its standard form release on another occasion. Katspan was simultaneously involved in a construction project for the city of Renton. Katspan needed materials from U.S. Filter in order to meet its deadline but could not afford them. According to the declaration of Travelers claims manager Gerald Ormiston, he agreed that Travelers would pay U.S. Filter for the materials. When U.S. Filter objected to the assignment and warranty provisions, Travelers agreed to delete those provisions. According to Ormiston's declaration, he did so because "time and deadlines were so critical on the Renton Project" that he "did not have time to explain, argue or negotiate with U.S. Filter or otherwise insist on compliance with our standard form."

U.S. Filter filed a claim with the city of Kent against the bond for $7,458.62, the amount owing for the materials on the Kent project. The parties continued to disagree on the wording of the release. Three months after it filed its claim with the city, U.S. Filter filed a lawsuit against Katspan, Travelers, and the city to recover the unpaid amount. In its answer, Travelers admitted that it owed the principal amount. It also asserted that it had tendered the amount due before the end of September 2001. The answer also stated that Travelers was tendering to the clerk the amount due. Travelers paid the court clerk $8,086.16, which included interest at the statutory rate of 12 percent, court costs, and a "statutory attorney fee" of $125.

Travelers then filed a motion to have the clerk pay the deposited amount to U.S. Filter and dismiss the case. U.S. Filter responded with a motion for summary judgment asserting that it was entitled to actual reasonable attorney fees and interest at 18 percent, the amount provided for in the supply contract between U.S. Filter and Katspan. The

trial court granted Travelers' motion to dismiss and disbursed the funds to U.S. Filter.

## ATTORNEY FEES

U.S. Filter first argues that the trial court should have awarded its reasonable attorney fees under RCW 39.08.030. Travelers argues that such fees were inappropriate because Travelers did not actively oppose the claim. But Travelers' interests were adverse to U.S. Filter's once the parties disputed the conditions Travelers attempted to impose on its tender of the amount owed. Absent any evidence that U.S. Filter disputed the release terms in bad faith in order to obtain attorney fees, the statute requires that fees be awarded to U.S. Filter.

When a public body undertakes a construction project, the company that is awarded the contract must procure payment and performance bonds. RCW 39.08.010. Such bonds ensure that the contractor will perform the work and subcontractors and suppliers will be paid. RCW 39.08.010. If the contractor becomes insolvent, a supplier can recover amounts due from the surety that issued the bond. RCW 39.08.010. If the supplier files a written claim with the surety and the surety does not pay within 30 days, the supplier is entitled to reasonable attorney fees in any subsequent lawsuit it files to recover the money owed. RCW 39.08.030.[2] This is not a discretionary provision; where the statute applies, the trial court is required to award fees. *See* RCW 39.08.030 (plaintiff "shall be entitled to recover" fees).

But such fees are not available any time a subcontractor sues a contractor and also names the contractor's surety. Rather, the surety itself must have had interests adverse to

---

[2] The relevant portion of RCW 39.08.030 states:

"[I]n any suit or action brought against such surety or sureties by any such person or corporation to recover for any of the items hereinbefore specified, the claimant shall be entitled to recover in addition to all other costs, attorney's fees in such sum as the court shall adjudge reasonable: PROVIDED, HOWEVER, That no attorney's fees shall be allowed in any suit or action brought or instituted before the expiration of thirty days following the date of filing of the notice hereinbefore mentioned . . . ."

the claimant for the statute to apply. *Lakeside Pump & Equip., Inc. v. Austin Constr. Co.*, 89 Wn.2d 839, 847, 576 P.2d 392 (1978) (citing *Brear v. Wash. State Highway Comm'n*, 67 Wn.2d 308, 316, 407 P.2d 423 (1965)). *See also Beardmore Heavy Hauling & Crane Serv. v. S.G. Morin*, 71 Wn.2d 273, 275, 427 P.2d 975 (1967) (per curiam). When the surety actively opposes a claim, courts have had little trouble finding that the interests of the surety and claimant were adverse. *See, e.g., Sime Constr. Co. v. Wash. Pub. Power Supply Sys.*, 28 Wn. App. 10, 17, 621 P.2d 1299 (1980), *review denied*, 95 Wn.2d 1012 (1981).

Travelers first argues that courts should not consider a surety's prelitigation conduct in determining whether to award attorney fees. But there is no statutory or common law support for this position, and in fact, it contravenes one of the primary purposes of attorney fee provisions—to prevent plaintiffs with undisputed claims from having to file lawsuits in the first place. Although the cases granting attorney fees have focused primarily on the surety's conduct within the context of litigation, none of those cases purported to deny attorney fees to a claimant where a surety opposed a claim before litigation and then acquiesced when a lawsuit commences. We decline Travelers' invitation to impose such a limitation here.

Travelers further argues that even if we consider its conduct before litigation commenced, it never actively opposed this claim. Travelers therefore argues that its interests were not sufficiently adverse to those of U.S. Filter to justify an award of attorney fees. We disagree. Although Travelers did not refuse payment outright, it imposed conditions on payment when it insisted that U.S. Filter sign a release containing warranty and assignment clauses. As soon as U.S. Filter disputed those clauses, the interests of the parties became adverse. Travelers had an interest in protecting itself from future claims, whereas U.S. Filter had an interest in ensuring that it would not be disadvantaged in its other claims against Katspan. Travelers owed the amount of Katspan's obligation under the surety agree-

ment; U.S. Filter owed Travelers nothing. Thus, by insisting on the disputed provisions, Travelers attempted to secure consideration from U.S. Filter that U.S. Filter did not owe.[3] This case, therefore, is exactly the type of case to which the attorney fee provision applies—a case in which a surety attempted to use its superior bargaining position to secure additional consideration from the claimant. *See Brear*, 67 Wn.2d at 316.[4]

Travelers argues that U.S. Filter's refusal to sign the release was unreasonable because neither clause could have prejudiced U.S. Filter. But although Travelers correctly points out that such agreements are valid if signed,[5] there is no authority *requiring* a supplier to sign them in order to enforce its right to reimbursement against the surety. Further, our inquiry does not turn on whether the provisions, as a matter of law, could have affected U.S. Filter's interests. Such a rule would put the onus on the supplier to research every possible implication of a form agreement before signing or rejecting it. Rather, the relevant inquiry is whether Travelers was entitled to insist on the release provisions. It was not, so we will not second-guess an exercise of caution by counsel in advising a client not to sign such an agreement. Subcontractors and suppliers are not required to trust a surety's assurances that such language is mere surplusage or assume the risk, however slight, that the provision will come back to haunt them in some unforeseen way.

---

[3] The language of the release clearly contemplated the warranty and assignment language as consideration for the payment of the claim. The release stated that the assignment was to be "[i]n further consideration of the aforesaid payment" and that the warranties portion was "a further inducement to Surety for making payment at this time."

[4] Ormiston's declaration further supports this conclusion. According to Ormiston, he deleted the same provisions in the Renton project because Katspan needed additional materials from U.S. Filter in order to complete the project. In this claim, however, U.S. Filter had already supplied all the materials. Thus, only when U.S. Filter had a better bargaining position did Travelers tender the amounts it owed unconditionally.

[5] *See N.W. Nat'l Bank of Bellingham v. Guardian Cas. & Guar. Co.*, 93 Wn. 635, 646, 161 P. 473 (1916).

Travelers asserts that this lawsuit was filed for the sole purpose of recovering attorney fees. If the record supported that assertion, a different result would be warranted. But while U.S. Filter's concerns might have been of questionable merit, there is no evidence that they were insincere. In fact, U.S. Filter disputed the same provision in another claim, and on that occasion, Travelers acquiesced and struck the provisions. This strongly suggests that U.S. Filter did not "pick a fight" in this instance in order to cause litigation, but genuinely believed the clauses had a potential for harming its interests.

Travelers also argues that awarding fees to U.S. Filter contravenes the purpose of RCW 39.08.030 because it rewards litigiousness. We disagree. Although it is indeed regrettable that the parties were unable to reach an agreement without resorting to litigation over such a small principal amount, both parties were adamant in their positions, and U.S. Filter prevailed. The result of the litigation was that U.S. Filter received the reimbursement it was owed without having to sign the objectionable portions of the release. Thus, Travelers could have avoided litigation and reached the same result by simply striking the provisions to which U.S. Filter objected. Awarding attorney fees in this instance therefore comports with one of the primary purposes of attorney fee provisions, which is to prevent needless litigation.[6]

---

[6] In its reply brief, U.S. Filter argues that this case is analogous to insurance cases that have awarded attorney fees where an insurer compels its insured to assume the burden of legal action in order to obtain the benefit of an insurance policy. *See Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 52-53, 811 P.2d 673 (1991). Travelers has filed a motion to strike that portion of U.S. Filter's brief because U.S. Filter did not raise this argument before. *See Axess Int'l Ltd. v. Intercargo Ins. Co.*, 107 Wn. App. 713, 719, 30 P.3d 1 (2001) ("An issue raised and argued for the first time in a reply brief is raised too late."). But in its opening brief, U.S. Filter argued that awarding fees would comport with the purpose of attorney fee provisions because Travelers forced U.S. Filter to file suit in order to enforce the bond. Thus, U.S. Filter's citation to *Olympic Steamship* was not improper to the extent that it was merely an analogy used to support the arguments raised in its original brief. Moreover, we have not based our decision on *Olympic Steamship*, but on the attorney fee provision in RCW 39.08.030. We therefore deny the motion to strike portions of U.S. Filter's reply brief.

U.S. Filter and Travelers had adverse interests, and Travelers opposed U.S. Filter's claim by insisting[7] on additional consideration in exchange for the money it owed U.S. Filter. RCW 39.08.030 therefore requires that fees be awarded to U.S. Filter. The trial court erred in failing to do so.

## CONTRACTUAL INTEREST

U.S. Filter also argues that it is entitled to interest at 18 percent, as stated in its supply contract with Katspan, rather than the statutory rate of 12 percent. This argument we reject. A surety's liability to subcontractors and suppliers is governed by the surety statute and the surety agreement, not by the contract between a supplier and a primary contractor. U.S. Filter was therefore entitled to interest only at the statutory rate.

■■ A supplier's right of action against a defaulting contractor's surety arises from the provisions of RCW 39.08.030, not from the terms of its agreement with the contractor. In *Keller Supply Co. v. Lydig Construction Co.*, 57 Wn. App. 594, 789 P.2d 788, *review denied*, 115 Wn.2d 1012 (1990), this court held that the trial court improperly calculated interest at the rate specified in the underlying contract instead of the statutory rate. Our holding in *Keller* is controlling here:

> Lydig argues the trial court improperly awarded and calculated prejudgment interest to Keller with respect to its claim. The trial court awarded interest at a rate of 1.8 percent per month based upon the contract between [subcontractor] Warrior and [supplier] Keller. Because the contract is not part of the record before this court, we cannot use it to support the trial court's ruling. In any event, we do not believe Keller's right of action in the instant matter arises in any way out of its

---

[7] This is not to suggest that a surety assumes an adversarial stance by merely including such language in a standard form release. Certainly, a surety may include such language in its standard release, and a supplier who signs the release will be bound by it. But once a supplier objects to such language, a surety must drop the conditions or be prepared to pay attorney fees if the supplier sues to enforce the bond.

contract with Warrior. Rather, *its claim is based solely on the provisions of the Bond Act and the Retainage Act*. Therefore, Keller is entitled to prejudgment interest at the statutory rate from the date it filed its claim of lien.

*Keller*, 57 Wn. App. at 600 (emphasis added).

U.S. Filter's attempts to distinguish *Keller* are not persuasive. It is true that the contract at issue in *Keller* was between the supplier and a subcontractor, whereas U.S. Filter contracted directly with the bond claimant. But that distinction makes no difference. U.S. Filter is no more in privity with Travelers than the supplier in *Keller* was in privity with the surety. In both instances, the supplier has no contract with the surety, but has a cause of action because of the statute. The interest rate specified in the statute therefore controls over any agreements between U.S. Filter and Katspan. *See* 13 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS §§ 37.201, .209 (Victoria A. Braucher & Julie A. Rozwadowski eds., rev. vol. 1997) (statutory language trumps language in bond or contract).

A different result is not warranted by this court's decision in *C-Star Concrete Corp. v. Hawaiian Insurance & Guaranty Co.*, 8 Wn. App. 872, 509 P.2d 758 (1973). In that case, the parties disputed whether a claim was liquidated, but they did not dispute the rate of interest. The court held that the claim was liquidated and awarded interest as specified in the contract between the parties. *C-Star*, 8 Wn. App. at 875-76. But the issue of whether the contractual or statutory interest rate applied was neither argued by the parties nor addressed by the court. *C-Star*, therefore, offers little guidance, and we do not read that case as authority for the proposition that a contract between a supplier and the contractor controls over the language of the bond statute. *Keller*, which was decided later, controls this issue and is consistent with *C-Star*'s holding. U.S. Filter was entitled to interest only at the statutory rate.[8]

---

[8] Because we have concluded that U.S. Filter was entitled to attorney fees under the bond statute, we need not address its alternative argument that it is entitled to attorney fees under its supply contract with Katspan. We note, however, that

## TRAVELERS' DEPOSIT WITH THE COURT OF AMOUNT DUE

Travelers argues that we can affirm the trial court on the alternative basis that Travelers tendered the amount due to the court once U.S. Filter filed suit. But neither of the two statutes Travelers cites relieves its obligation to pay fees in this case. First, Travelers did not tender the full amount due prior to litigation, because Travelers conditioned its tender on U.S. Filter signing a release to which it objected. Further, Travelers tendered only $125 in attorney fees, rather than an amount sufficient to cover U.S. Filter's reasonable attorney fees as required by RCW 39.08.030. Travelers' tender to the court did not, therefore, preclude an award of attorney fees to U.S. Filter.

■ Generally, a plaintiff who has previously rejected the defendant's tender of the full amount owed must pay the defendant's costs if the defendant comes to court ready to pay:

> When in an action for the recovery of money, the defendant alleges in his answer, that, before the commencement of the action, he tendered to the plaintiff the full amount to which he is entitled, in such money as by agreement ought to be tendered, and thereupon brings into court, for the plaintiff, the amount tendered, and the allegation be found true, the plaintiff shall not recover costs, but shall pay them to the defendant.

RCW 4.84.110. But RCW 4.84.110 does not apply in this case because Travelers required consideration in exchange for its preclaim tender of payment when it conditioned payment on the signing of the release. Thus, the amount tendered was not the "full amount," but the "full amount" minus the value of the conditions Travelers sought to impose. *Cf. Larsen v. Russell*, 113 Wash. 474, 194 P. 535

---

the reasoning in *Keller* would seem to apply equally to this argument. A bond claimant's cause of action arises from the statute, not from its contract with the bond principal. *Keller*, 57 Wn. App. at 600. As such, it is highly unlikely that a bond claimant who did not qualify for attorney fees under the bond statute would be able to recover them from the surety based on language in its contract with the bond principal.

(1920) (holding *unconditional* tender of amount to satisfy mechanic's lien barred award of attorney fees and costs). To apply this provision in cases such as this would contravene the purpose of the attorney provision in the bond statute, which provides for fees when a plaintiff is required to file suit in order to obtain money owed by a surety.

■ Travelers also argues that it was not required to pay fees under RCW 4.84.120. Under that provision, a defendant can avoid paying additional costs by tendering an amount that covers the amount owed and the plaintiff's costs to date. Those costs include attorney fees if provided by statute. RCW 4.84.010(6). The amount Travelers deposited included only $125 in attorney fees, as the statutory amount authorized under RCW 4.84.080. As concluded above, however, U.S. Filter was entitled to fees "in such sum as the court shall adjudge as reasonable" under RCW 39.08.030. RCW 4.84.120 therefore does not penalize U.S. Filter for continuing the litigation in order to obtain the amount of attorney fees to which it was entitled by statute. Accordingly, we remand for a determination of the amount of reasonable attorney fees U.S. Filter spent in litigating its dispute with Travelers.

## FEES ON APPEAL

■ Under RCW 39.08.030, U.S. Filter is also entitled to fees on appeal. U.S. Filter has requested such fees pursuant to RAP 18.1. Because remand is otherwise required, the trial court shall determine the amount of appellate fees after remand as allowed by RAP 18.1(i).

Reversed and remanded.

KENNEDY and AGID, JJ., concur.