[No. 3357-1-III.   Division Three.   December 18, 1980.]

SIME CONSTRUCTION CO., INC., *Appellant,* v. WASHINGTON PUBLIC POWER SUPPLY SYSTEM, ET AL, *Respondents.*

*Dale R. Ulin* and *Taylor & Ulin,* for appellant.

*Frederic C. Tausend, Schweppe, Doolittle, Krug, Tausend, Beezer & Beierle, G. E. Doupé, Rembert Ryals,* and *Critchlow & Williams,* for respondents.

GREEN, C.J.—This action was brought by Sime Construction Co., Inc., (Sime), a second–tier subcontractor, against the Washington Public Power Supply System (WPPSS), the owner; Marley Co. (Marley), the prime contractor; Commercial Union Insurance Co. (Commercial), the bonding company; and Ragnar Benson, Inc., the subcontractor with whom Sime contracted. Sime sought damages for delay in the submission of changes in architectural drawings and for defective concrete supplied to it. Cross claims were filed between the parties and Burns & Roe, the architect, was added as a cross defendant. Sime recovered damages for the defective concrete, but appeals from the denial of its drawings claim. WPPSS cross–appeals from a judgment in favor of Marley; Marley and Commercial cross–appeal the dismissal of their cross claim against Burns & Roe and from portions of the judgment entered against them. We affirm.

Two basic issues are presented: (1) Did Sime's failure to submit a notice of claim in accordance with the terms of the prime contract bar recovery of its drawings claim? (2) Was Sime entitled to recover attorney fees and prejudgment interest on the concrete claim?

The unchallenged findings of fact[1] establish that WPPSS entered into a construction contract with Marley to build six nuclear reactor cooling towers at Hanford Project No. 2 at a cost of $7,226,600. Marley awarded a subcontract for earth work, foundations and erection of the superstructure to Ragnar Benson, Inc. Ragnar in turn entered into a sub–subcontract with Sime for the excavation and construction of the concrete foundations of the towers for the sum of $350,000. During negotiations, Ragnar approved a proposed

---

[1] A report of these proceedings was not prepared for the appeal; instead, the parties rely upon unchallenged findings of fact and assign error only to certain conclusions of law and the judgment.

construction schedule. It provided that the foundations were to be built sequentially in a clockwise manner, and the hot water inlets and cold water outlets were to be built in the early stages of construction. This schedule was approved and essentially followed by Sime in the performance of the Ragnar–Sime contract.

In June 1978, when Sime commenced work, certain critical drawings relating to the cold water outlets were not available. Burns & Roe had withheld the drawings because it was initiating a change in a construction joint to improve the design of the outlet structure. Sime, Ragnar and Marley all knew the drawings were delayed. Due to the late delivery of the revised drawings, Sime was unable to begin the outlets until August. Even though the eventual design changes were minor, the sequence of work was seriously disrupted.

After it had completed its work, Sime submitted a claim for damages arising from the late delivery of the revised drawings. The claim was rejected on the ground that Sime had failed to submit a timely notice of claim as required by the prime contract. This action was then filed by Sime. After a 6–week trial to the court, Sime was awarded damages, attorney's fees, and prejudgment interest on the concrete claim but was denied recovery on the drawing claim.

First, was the drawings claim barred by Sime's failure to give a 15–day notice in accordance with the terms of the prime contract between WPPSS and Marley? It is clear that article 2, section C of the Ragnar–Sime sub–subcontract entitles Sime to damages for delay.[2] Marley and Commercial assert the trial court was correct when it held that

---

[2]Article 2, section C, provides in pertinent part:

"Should Subcontractor's performance of this Subcontract be delayed by any acts or causes which would entitle Contractor, or Subcontractor through Contractor, to an extension of time under the Contract Documents, Subcontractor shall be granted such extension of time as Contractor, or Subcontractor, through Contractor, is entitled to have granted by the Owner and/or Architect, and Subcontractor shall be entitled to such increase in the contract sum, or to any damages or additional compensation as a result of any such delay to the extent that Contractor, or Subcontractor through Contractor, is entitled to recover therefor from the

Sime's failure to give the 15–day notice bars recovery on the drawings claim. On the other hand, Sime contends the court erred because (1) the notice procedures of the prime contract are not incorporated by reference into the sub–subcontract for purposes of the drawings claim; (2) application of the notice procedures contained in the "Change Order" clause of the prime contract created a procedural ambiguity which should have been construed against the drafters, Marley, Ragnar and WPPSS; and (3) the court's interpretation made an agreement which the parties had not made for themselves. We disagree with Sime's contentions.

The sub–subcontract incorporates by reference, without qualification, the terms of the prime contract. *McDaniel v. Ashton–Mardian Co.*, 357 F.2d 511 (9th Cir. 1966); *Turner v. Wexler*, 14 Wn. App. 143, 538 P.2d 877 (1975). Article 1, section A of the Ragnar/Sime sub–sub-contract provides:

> A. Subcontract documents include all the below listed items, all of which are incorporated herein and made part hereof by reference thereto.
> 1. The Contract between the Owner and the Contractor dated                and the conditions thereof (general, supplementary and other conditions).

While the date of the prime contract was omitted, WPPSS and Marley are referred to immediately preceding the incorporation clause.[3]

Section 3.0 of the WPPSS–Marley prime contract sets forth the procedures for changes in the work. The term

---

Owner and/or Architect. . . . Subcontractor shall notify Contractor in writing of any delay or interference, or possible delay or interference, for which the Owner and/or Architect is or may be responsible, or of any changed conditions and of Subcontractor's resultant damages or right in additional time and/or compensation, in sufficient time so that the claim may be timely processed against the Owner and/or Architect. Contractor shall be responsible for any other type of delay caused by Contractor, and Subcontractor shall be entitled to damages for any such delay caused by contractor. . . ."

[3]Marley is referred to as "engineer", rather than "contractor"; WPPSS is properly referred to as "owner."

"Change Order Work" is broadly defined in section 3.1 as "work not included in the original contract." Section 3.5 provides:

> If at any time the Contractor receives any drawings, specification, instruction or request from the Owner or from the Engineer of the Owner with respect to which the Owner does not request a proposal for the doing of the Work and the payment of compensation, but *which in the Contractor's opinion entails the performance of Change Order Work for which compensation has not been included in the compensation for the original contract work in the contract price*[,] *the Contractor shall within fifteen days after such receipt notify the Owner that he considers the item to require the payment of compensation for work in addition to that provided for in the original contract* and he shall submit a proposal according to the method outlined above for the doing of the work and the payment of compensation for it . . . *Failure of the Contractor to give the notice required within fifteen days shall constitute a release and waiver of any claim against the Owner and unless so claimed, no additional compensation shall be considered or paid.*

Sime admittedly failed to comply with the notice procedures.

However, Sime argues the notice procedures of the prime contract are not incorporated by reference into the sub-subcontract for purposes of the drawings claim. It relies upon the rule that where one contract is incorporated by reference into another for a special purpose, the incorporation is limited to that purpose. *Guerini Stone Co. v. P.J. Carlin Constr. Co.*, 240 U.S. 264, 60 L. Ed. 636, 36 S. Ct. 300 (1915); *John W. Johnson, Inc. v. Basic Constr. Co.*, 429 F.2d 764 (D.C. Cir. 1970); *United States ex rel. B's Co. v. Cleveland Elec. Co.*, 373 F.2d 585 (4th Cir. 1967). It contends the purpose for the incorporation is to define the scope of the work of subcontractors and to make it clear that the subcontractor must perform its work pursuant to "applicable" specifications. Therefore, Sime asserts the administrative and procedural provisions of the prime contract are not applicable. The cases upon which Sime relies

are not controlling. There, the incorporation was for a special purpose. Here, the incorporation clause is general and unlimited. In that situation, both the contract specifications and procedural provisions of the prime contract are incorporated by reference. *McDaniel v. Ashton–Mardian Co., supra.*

Sime further argues that the "Change Order" clause of the prime contract created a procedural ambiguity which should have been resolved against the drafters, Marley, WPPSS and Ragnar. We disagree. "Change Order Work" is broadly defined as "work not included in the original contract work." Sime submitted a work schedule to Ragnar which was accepted and became a specification of the sub–subcontract. That schedule was disrupted by the late delivery of the revised drawings. As a result, Sime was forced to perform work out of sequence and not included in the contract. The court found Sime, Ragnar and Marley all knew the drawings were delayed because Burns & Roe were initiating an improvement of the design for the outlet structure. The claim for damages resulting from the nonsequential work was almost as much as the original contract. Had Sime given the 15–day notice required under the prime contract which would have outlined the additional cost of doing work out of sequence, WPPSS, Marley and Ragnar could have balanced the desirability of the design improvement against those costs in determining economic feasibility. Consequently, the revision and late delivery of the revised drawings were the precise kind of "Change Order Work" contemplated by the prime contract.

Nevertheless, Sime argues that the procedures are ambiguous for the submission of such claim if it is required. It points out that the provisions are unclear as to whom the claim would be submitted and that under the Ragnar–Sime sub–subcontract it is only required that a claim for delay be submitted promptly; whereas, under section 3.1 of the prime contract it must be submitted within 15 days. Therefore, Sime contends the ambiguities must be construed against the drafters and in favor of Sime. However,

this is not a mere delay situation; rather, it results from a change in the contract specifications. Further, a reading of all the contract documents does not reveal the ambiguities claimed by Sime. In any event, it is clear Sime was obligated to bring its claim prior to completion of its work. It did not do so. To hold otherwise would defeat the purpose of the "Change Order Work" provision.

Finally, as a corollary, we find no merit in Sime's contention that the trial court made a contract for the parties that they had not made for themselves.

With respect to the second basic issue, WPPSS contends that Sime is not entitled to attorney's fees or prejudgment interest on the concrete claim.

Generally, a contractor's successful claim of lien entitles it to attorney's fees where the surety has an adverse interest in the action. RCW 39.08.030; *Lakeside Pump & Equip., Inc. v. Austin Constr. Co.*, 89 Wn.2d 839, 576 P.2d 392 (1978). It is evident that Commercial actively challenged Sime's claim of lien and the court entered a finding to that effect. Sime obtained a judgment against Commercial. Accordingly, Sime is entitled to attorney's fees.

WPPSS argues that the trial court improperly awarded attorney's fees against the reserve fund citing RCW 60.28.020[4] and *Paine–Gallucci, Inc. v. Anderson*, 41 Wn.2d 46, 246 P.2d 1095 (1952). *Paine–Gallucci* is not

---

[4]RCW 60.28.020 provides:

"After the expiration of the thirty day period, and after receipt of the department of revenue's certificate, and the public body is satisfied that the taxes certified as due or to become due by the department of revenue are discharged, and the claims of materialmen and laborers who have filed their claims, together with a sum sufficient to defray the cost of foreclosing the liens of such claims, and to pay attorneys' fees, have been paid, the public body shall pay to the contractor the fund retained by it or release to the contractor the securities and bonds held in escrow.

"If such taxes have not been discharged or the claims, expenses, and fees have not been paid, the public body shall either retain in its fund, or in an interest bearing account, or retain in escrow, at the option of the contractor, an amount equal to such unpaid taxes and unpaid claims together with a sum sufficient to defray the costs and attorney fees incurred in foreclosing the lien of such claims, and shall pay, or release from escrow, the remainder to the contractor."

applicable. There, the surety had been dismissed and the judgment was solely against the reserve fund. In that case, the court denied attorney's fees because of the absent surety. Here, Sime was awarded a judgment against Ragnar and the surety, Commercial. There was no direct judgment in favor of Sime against WPPSS. Ragnar was awarded a judgment for indemnity against Marley who, in turn, obtained a judgment of indemnity against WPPSS. Because Marley's claim is for indemnity, it is entitled to recover compensatory damages equal to the amount of the Ragnar judgment which included Sime's attorney's fees against Ragnar. *Armstrong Constr. Co. v. Thomson,* 64 Wn.2d 191, 390 P.2d 976 (1964). In these circumstances, there was no error.

■ WPPSS claims the award of prejudgment interest was in error because the amount of the claim was uncertain. Prejudgment interest is allowable when the claim is liquidated. A liquidated claim is one where evidence furnishes data which makes it possible to compute the amount with exactness, without reliance on opinion or discretion. *Seattle v. Dyad Constr., Inc.,* 17 Wn. App. 501, 520, 565 P.2d 423 (1977).

■ Since the parties have failed to provide a report of proceedings, we must confine our analysis to the trial court's findings. Those findings fix the amount of damages on the concrete claim as a sum certain. The sum certain amount was reduced by $1,000 because the trial court was unable to assign responsibility for late tests which impeded the concrete work. The trial court further reduced the award by 10 percent because it found Sime was responsible for one–tenth of the delay. The trial court then added 30 percent to cover Sime's overhead and profit. On the basis of these unchallenged findings and without an adequate record to determine how the trial court arrived at these figures, we cannot say the trial court's decision was based upon opinion or discretion. Since WPPSS has the burden of providing an adequate record, but failed to do so, the decision must stand. *Chace v. Kelsall,* 72 Wn.2d 984, 435

P.2d 643 (1967); *Gaupholm v. Aurora Office Bldgs., Inc.,* 2 Wn. App. 256, 467 P.2d 628 (1970); *In re Estate of Rynning,* 1 Wn. App. 565, 462 P.2d 952 (1969); RAP 9.2. Accordingly, we affirm.[5]

McINTURFF and ROE, JJ., concur.

Reconsideration denied February 6, 1981.

Review denied by Supreme Court April 3, 1981.

---

[5]Because this appeal affirms the trial court's denial of the drawings claim, it is unnecessary to decide whether Burns & Roe was properly dismissed.