[No. 6996-6-III. Division Three. May 1, 1986.]

MOUNTAIN STATES CONSTRUCTION CO., ET AL, *Appellants,* v. TYEE ELECTRIC, INC., ET AL, *Respondents.*

*Joel E. Smith* and *Gavin, Robinson, Kendrick, Redman & Pratt,* for appellants.

*Walter G. Meyer, Jr., Bryan G. Evenson,* and *Halverson & Applegate,* for respondents.

THOMPSON, J.—General contractor Mountain States Construction Company and its insurer, United Pacific Insurance, appeal the summary judgment dismissal of breach of contract claims against subcontractor Tyee Electric, Inc., and its insurer, St. Paul Insurance Co., for failure to obtain adequate insurance. We affirm.

In March 1978, Mountain States was awarded a contract by the City of Wapato to construct waste water treatment facilities. Included in the main contract between Mountain States and the City was "Stipulation 26" which provided in pertinent part:

> 26. Contractor's Public Liability and Property Damage Insurance: The Contractor [Mountain States] shall not commence work under this contract until he has furnished evidence (in duplicate copy) of insurance required hereunder . . . nor shall the Contractor allow any subcontractor to commence work on his subcontract until the same insurance requirements have been complied with by such subcontractor. . . . Evidence of liability insurance shall be furnished on the "Certificate of Insurance" form included at the end of this article.
>
> . . .
>
> The Contractor shall maintain, during the life of this contract, Comprehensive General and Automobile Liability Insurance and Builders' Risk "All–Risk" Insurance as detailed herein. The insurance shall include, as Additional Named Insureds, the Owner [City of Wapato] and the Engineer.

Mountain States entered into a subcontract with Tyee to provide supervision, materials, labor, supplies and equipment for electrical work. Paragraph A of the subcontract

provided in part:

(A) OBLIGATIONS AND RESPONSIBILITIES

It is agreed that the Subcontractor will assume toward the Contractor all obligations and responsibilities which the Contractor has assumed toward the Owner under the Main Contract, and shall be entitled to all privileges and protection granted the Contractor by the Owner, under the Main Contract. In case of conflict between the terms of the obligation and the responsibilities of the parties of this Subcontract and the Main Contract, this Subcontract shall control.

Paragraph S of the same subcontract provided:

(S) INSURANCE

Subcontractor shall obtain and keep in force during the term of the contract public liability and property damage insurance with coverage equal to, or greater than, the minimum specified in the Main Contract. The Subcontractor shall furnish to the Contractor evidence of this insurance as in the same form as described in Paragraph (R). Such insurance shall indicate that it includes contractual liability coverage applicable to the indemnity provisions of the Subcontract. The Subcontractor shall give Contractor ten days notice of any cancellation.

On May 4, 1979, a Tyee employee was fatally injured while in the course of his employment at the jobsite. The personal representative brought a wrongful death action against Mountain States and was awarded a $320,000 jury verdict after a 60 percent reduction for the decedent's comparative fault. Thereafter, Mountain States and its insurer, United Pacific, sought to enforce subcontract indemnity provisions against Tyee. Their complaint was amended and the relief sought was changed to a request for damages based on breach of the contractual obligation to insure. The trial court granted Tyee's motion for summary judgment, ruling the provision in the subcontract requiring the subcontractor to assume toward the general contractor all obligations the general contractor owes the owner did not require the subcontractor to obtain comprehensive general liability insurance naming the general contractor as an additional insured.

 The dispositive issue is whether Tyee breached its contract as a matter of law. Our review is governed by the principle that absent disputed facts, contract construction is a matter of law, and the appellate court is in as good a position as the trial court to interpret a contract's meaning. *Yeats v. Estate of Yeats,* 90 Wn.2d 201, 204, 580 P.2d 617 (1978); *Jones Assocs. v. Eastside Properties, Inc.,* 41 Wn. App. 462, 465–66, 704 P.2d 681 (1985).

The court concluded stipulation 26 of the main contract read solely with paragraph A of the subcontract would require Tyee to name Mountain States as an additional insured in its liability policy. The court further concluded, however, that the language of paragraph S of the subcontract created a conflict between that provision and stipulation 26. Based on (1) the fact Mountain States drafted the subcontract; (2) language in paragraph A, which asserted the controlling effect of the subcontract; and (3) absence of a certificate of insurance form in the main contract, the court found the subcontract controlled and was not breached.

 Subcontractors have been validly required to procure insurance policies covering liability of the prime contractor where that duty is expressly set forth, *see, e.g., Washington Metro Area Transit Auth. v. Mergentime Corp.,* 626 F.2d 959 (D.C. Cir. 1980). However, in this instance paragraph S of the subcontract, which required Tyee to obtain insurance coverage "equal to, or greater than, the minimum specified in the [main contract]" is ambiguous. Does coverage mean just dollar limits? Does it include perils and insureds? The language in paragraph S does not say. The reference to the main contract seems to be a reference only as to policy dollar amounts. If it is supposed to include perils covered and persons or entities insured, it does not so state. In short, the language is ambiguous and such ambiguity must be construed against the drafter, Mountain States. *Brown v. Prime Constr. Co.,* 102 Wn.2d 235, 241, 684 P.2d 73 (1984).

Mountain States argues, however, the ambiguity is

resolved by language in paragraph A which requires Tyee to assume "toward the Contractor" (Mountain States) all obligations Mountain States owed the City and engineer. It contends this includes the obligation to name Mountain States as an insured. Again, we disagree. If anything, this broad language introduces additional ambiguity. If paragraph A is read literally, the subcontractor is obligated to construct the entire waste water treatment facility and fulfill all terms of the prime contractor's obligations. It is obvious that neither party intended the language to effectuate such a result. Mountain States, as the general contractor, undertook duties far greater than did Tyee, the electrical subcontractor. What the court is asked to do is graft Mountain States' self–serving interpretation of paragraph A onto paragraph S to overcome the shortcomings in paragraph S. But there is no language contained in paragraph A that would provide notice to Tyee that it was expected to obtain an insurance policy naming Mountain States as an insured. If Mountain States had such a result in mind, it should have so stated when it drafted paragraph S in its attempt to specifically set out Tyee's contractual obligations pertaining to insurance.

Although a subcontract may incorporate by reference the terms of the prime contract, the incorporation may be limited to a special purpose. *Sime Constr. Co. v. WPPSS,* 28 Wn. App. 10, 14, 15, 621 P.2d 1299 (1980). In *Sime,* which involved a sub–subcontract for excavation and construction of concrete foundations for six Hanford nuclear reactor cooling towers, the court interpreted language in the incorporating clause of the sub–subcontract which provided:

> A. Subcontract documents include all the below listed items, all of which are incorporated herein and made part hereof by reference thereto.
> 1. The Contract between the Owner and the Contractor dated and the conditions thereof (general, supplementary and other conditions).

*Sime,* at 14.

The court ruled the incorporating clause in *Sime* was general and unlimited and therefore incorporated both main contract specifications as well as procedural notice provisions. We find *Sime* factually distinguishable, however, in that the scope of Tyee's duties were much more limited than those assumed in the *Sime* contract. Moreover, the specific reference in the *Sime* sub–subcontract to incorporation of "general, supplementary, and other conditions" is more specific than the ambiguous general reference here to "all obligations and responsibilities" of the contractor. The trial court was correct in holding Tyee had met its contractual obligations to obtain insurance as agreed in the subcontract.

Affirmed.

McINTURFF, A.C.J., and MUNSON, J., concur.