[No. 86210-9.   En Banc.]
Argued January 10, 2012.   Decided January 31, 2013.

WASHINGTON STATE MAJOR LEAGUE BASEBALL STADIUM PUBLIC FACILITIES DISTRICT ET AL., *Appellants*, v. HUBER, HUNT & NICHOLS-KIEWIT CONSTRUCTION COMPANY ET AL., *Respondents.*

504

*Zachary Tomlinson, John H. Parnass,* and *Stephen M. Rummage* (of *Davis Wright Tremaine LLP*), for appellants.

*Michael P. Grace* and *David C. Groff Jr.* (of *Groff Murphy PLLC*); *Christopher Wright* (of *Watt, Tieder, Hoffar & Fitzgerald LLP*); *William J. O'Brien III* (of *Law Office of William J. O'Brien*); and *Richard L. Martens* and *Steven A. Solle* (of *Martens & Associates PS*), for respondents.

*Todd C. Hayes* on behalf of Associated General Contractors of Washington, amicus curiae.

¶1 MADSEN, C.J. — This action arises out of a contract for construction of a baseball stadium and home field for the Seattle Mariners baseball team. It is the second time the case has been before us. In *Washington State Major League Baseball Stadium Public Facilities District v. Huber, Hunt & Nichols-Kiewit Construction Company*, 165 Wn.2d 679, 202 P.3d 924 (2009) (*PFD I*), we held that the statute of limitations did not bar the owner's suit against the general contractor because the action was brought for the benefit of the State, and therefore the exemption from the statute of limitations set out in RCW 4.16.160 applied. The present case raises questions about whether the construction statute of repose bars suit against the general contractor and, if

not, whether the general contractor may pursue third party claims against two of its subcontractors.

¶2 The trial court granted summary judgment of dismissal in favor of the general contractor and the subcontractors on statute of repose grounds. We reverse the trial court. In light of a provision in the prime contract defining when causes of action accrue, the statute of repose does not bar suit against the general contractor. In accord with several provisions in the subcontracts, the subcontractors are subject to liability to the same extent that the general contractor may be liable for any defective materials or work under the subcontracts. Thus, the trial court erred in holding that the statute of repose bars Hunt Kiewit's third party claims against the subcontractors. We remand for further proceedings.

## FACTS

¶3 In May 1996, the Washington State Major League Baseball Stadium Public Facilities District (PFD) executed a construction contract with Huber, Hunt & Nichols-Kiewit Construction Company (Hunt Kiewit) for construction of Safeco Field, the stadium and home field of the Baseball Club of Seattle LP, i.e., the Seattle Mariners baseball team. The PFD is a Washington municipal corporation that developed and owns Safeco Field. The Mariners maintain and make necessary repairs to the field. Pursuant to contractual agreement, PFD must reimburse the Mariners for any unanticipated capital costs incurred in making repairs.

¶4 The construction contract required that exposed structural beams and columns at the stadium be fireproofed. Hunt Kiewit subcontracted this work to Herrick Steel Inc. (Herrick), which was responsible for priming the beams and columns at the time they were fabricated and then installing them, and Long Painting Company (Long), which was responsible for applying an intumescent product to the beams and columns and then painting them.

¶5 In February 2005, the Mariners president noticed blisters on the face of the structural steel. The problem was widespread and involved separation of the intumescent product from the beams and columns. Allegedly, instead of the primer that had been specified, another product had been used and this resulted in incompatibility between the primer and the intumescent coating. After initial repairs began, the PFD and the Mariners learned that defects in the intumescent coating were far more extensive than had appeared at first, resulting in several million dollars' worth of needed repairs.

¶6 In August 2006, PFD and the Mariners (hereafter, collectively PFD) brought this breach of contract action against Hunt Kiewit, alleging that the fireproofing work or materials, or both, was defective. Hunt Kiewit brought third party claims against the subcontractors and subsequently moved for summary judgment, claiming, among other things, that PFD's action was barred by the statute of limitations. The trial court granted the summary judgment motion and also dismissed the third party claims against the subcontractors.

¶7 On appeal, we held in *PFD I* that the statute of limitations does not bar PFD's suit against Hunt Kiewit under the "for the benefit of the state" exemption to the six-year contract statute of limitations in RCW 4.16.160. We also reversed summary judgment in favor of the subcontractors.

¶8 On remand, a number of motions for summary judgment and reconsideration ensued. Included in these was a motion for summary judgment by Hunt Kiewit on statute of repose grounds. By November 2009, the motions to date had all been denied, including Hunt Kiewit's repose-based motion. Then, in January 2010, Herrick moved for summary judgment, seeking dismissal of Hunt Kiewit's third party claim against it on the ground that the statute of repose barred the claim. Following argument, the trial court responded by dismissing all claims in the case on statute of

repose grounds, including the claims against Hunt Kiewit brought by PFD, even though at that point Hunt Kiewit did not have a motion for summary judgment pending seeking dismissal of PFD's claims.

¶9 Notwithstanding the peculiar procedural course of this case on remand and although a number of issues are raised, we find it necessary to address only the issues that follow. Additional facts are related below as relevant.

## ANALYSIS

¶10 Review of a grant of summary judgment is de novo, and the court engages in the same inquiry as the trial court. *Wash. Imaging Servs., LLC v. Dep't of Revenue*, 171 Wn.2d 548, 555, 252 P.3d 885 (2011). Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

### Contractual Time of Accrual Provision

¶11 The first issue is whether the statute of repose bars suit against the general contractor, Hunt Kiewit. PFD contends that in the prime contract the parties contractually specified the time of accrual for claims arising from acts or omissions occurring prior to substantial completion of the project, setting accrual as no later than the date of substantial completion. PFD maintains the accrual clause is valid and that PFD's accrued claims, as defined by the clause, were brought within the statutory repose period. We agree.

¶12 Section 13.7 of the construction contract with Hunt Kiewit states in relevant part that "[a]s to acts or failures to act occurring prior to the relevant date of Substantial Completion, . . . any alleged cause of action shall be deemed to have accrued in any and all events not later than such date of Substantial Completion." Clerk's Papers (CP) at 793. Words in a contract are given their

ordinary, usual, and popular meaning, absent indication of any contrary intent or use of technical terms. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 504, 115 P.3d 262 (2005); *Berg v. Hudesman*, 115 Wn.2d 657, 669, 801 P.2d 222 (1990); *Blue Mountain Mem'l Gardens v. Dep't of Licensing*, 94 Wn. App. 38, 44, 971 P.2d 75 (1999). According to its plain language, Section 13.7 sets accrual in this case at no later than substantial completion, which the parties agree occurred on July 1, 1999. In addition, the clear language of this contractual provision establishes the time of accrual "in any and all events." Therefore, the contractual accrual time applies for purposes of both the statute of limitations and the statute of repose.

¶13 The construction statute of repose provides that "[a]ny cause of action which has not accrued within six years after such substantial completion of construction, or within six years after such termination of services, whichever is later, shall be barred." RCW 4.16.310. A cause of action that accrues no later than substantial completion will not be barred by the statute of repose because it will always accrue before the later of substantial completion or termination of services. Therefore, because of the parties' unambiguous agreement that accrual occurs no later than substantial completion, the statute of repose *cannot* have run on PFD's claims arising out of the construction contract.

¶14 Hunt Kiewit maintains, however, that the statute of repose ran from substantial completion on July 1, 1999, and PFD had just six years from that date to file suit. We do not agree. First, as explained, Section 13.7 sets accrual of the cause of action for statute of repose purposes as of the date of substantial completion, and the statute of repose requires accrual by the later of substantial completion or termination of services. Therefore, PFD's cause of action necessarily accrued within six years of substantial completion and thus satisfied the statute of repose.

¶15 Second, the argument confuses the application of a statute of repose with a statute of limitation. There is a

significant difference between a statute of limitation and a statute of repose, as we have recognized in cases involving suits arising out of construction projects. *E.g., Cambridge Townhomes, LLC v. Pac. Star Roofing, Inc.*, 166 Wn.2d 475, 484-85, 209 P.3d 863 (2009); *Davis v. Baugh Indus. Contractors, Inc.*, 159 Wn.2d 413, 426 n.2, 150 P.3d 545 (2007); *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 574-75, 146 P.3d 423 (2006). A statute of limitation bars a plaintiff from bringing an accrued claim after a specific period of time. A statute of repose terminates the right to file a claim after a specified time even if the injury has not yet occurred. *Cambridge Townhomes*, 166 Wn.2d at 485; *1000 Virginia*, 158 Wn.2d at 574-75. A claim generally accrues when a party has the right to seek relief in court. *Cambridge Townhomes*, 166 Wn.2d at 485. Under the statute of repose in RCW 4.16.310, the cause of action must have accrued within the six years, but once it has, as here, that is the end of the statute of repose inquiry. Whether an accrued claim is timely filed is a different question, involving the statute of limitations, not the statute of repose. RCW 4.16.310 says nothing about whether an accrued action must be *filed* within six years.

¶16 Next, Hunt Kiewit maintains that Section 13.7 must not be construed to govern accrual for statute of repose purposes because this would contravene the intent underlying the provision. We disagree.

¶17 Hunt Kiewit contends that the intent of this provision, which appears in standard form American Institute of Architects (AIA) documents, is to limit liability of parties to the contract and protect the contractor from extended periods of liability that could ensue from application of a discovery rule for accrual. Werner Sabo, Legal Guide to AIA Documents § 4.82, at 395 (4th ed. 1998). However, the language of the provision is plain and clearly sets accrual for all purposes ("in any and all events") as of the date of substantial completion. While we will not read into the provision intent contrary to its plain language, *see*

*Hearst Commc'ns*, 154 Wn.2d at 503 ("[w]e impute an intention corresponding to the reasonable meaning of the words used"), Section 13.7 in fact carries out the underlying intent identified by Hunt Kiewit.[1] Section 13.7 sets the accrual date at substantial completion, without regard to whether any discovery occurs at a later time. This restricts the effect of any applicable discovery rule and provides a date certain for commencement of the statute of limitations. Although the standard form Section 13.7 can effectively negate a statute of repose, it serves the purpose of preventing unlimited extension of the statute of limitations under a discovery rule—which is precisely the protection that Hunt Kiewit maintains is intended.

¶18 The problem for Hunt Kiewit is not that Section 13.7 "extends" the repose period, thus engendering uncertainty—it does not, but rather that in this case the statute of limitations is inapplicable because of the exemption for actions brought in the name of or for the benefit of the State—an entirely separate matter from the intent underpinning the standard form AIA provision.

¶19 Because the meaning of Section 13.7's time-of-accrual provision is clear, the next issue is whether the parties' agreement to a contractually established time of accrual will be given effect. Where statutes of limitation are concerned, parties can contractually agree to modify the statute of limitations " 'unless prohibited by statute or public policy,' " or the contractual modification is unreasonable. *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 356, 103 P.3d 773 (2004) (quoting *Ashburn v. Safeco Ins. Co. of Am.*, 42 Wn. App. 692, 696, 713 P.2d 742 (1986)); *see City of Seattle v.*

---

[1] The same authority that Hunt Kiewit relies on for its explanation of the intent behind the section points out, subsequent to the 1998 edition cited by Hunt Kiewit, that "[t]he prior versions of the AIA documents set the accrual date for the statute of limitations at substantial completion. A number of courts have reviewed that language and agreed that neither the discovery rule *nor the statute of repose applied*, finding that the language *meant exactly what it said*." WERNER SABO, LEGAL GUIDE TO AIA DOCUMENTS § 4.78 n.398 (Supp. 2011), *available at* Westlaw, LGAIA s 4.78 n.398 (emphasis added).

*Kuney*, 50 Wn.2d 299, 311 P.2d 420 (1957); *State Ins. Co. v. Meesman*, 2 Wash. 459, 463, 27 P. 77 (1891). The provision at issue does not modify the statute of limitations or the statute of repose, but it does affect how these statutes will apply. This relationship leads us to conclude that subject to the same principles that apply to contractual modification of a statute of limitations, parties may agree to set the time for accrual of causes of action arising under their construction contracts, and may do so with regard to both the statute of limitations and the statute of repose. Thus, the provision at issue here will be given effect unless it is contrary to statute or public policy, or it is unreasonable.

¶20 Hunt Kiewit has not cited any authority barring parties from contractually establishing the time of accrual of a cause of action, and we are not aware of any. No statute precludes the provision at issue here.

¶21 Hunt Kiewit maintains, however, that applying the time-of-accrual provision to the statute of repose violates public policy advanced by the legislature. The policy referred to was implemented in part in response to *Bellevue School District No. 405 v. Brazier Construction Co.*, 103 Wn.2d 111, 121, 122, 691 P.2d 178 (1984), *superseded by* Laws of 1986, chapter 305, § 702. In *Brazier Construction*, the issue was whether under RCW 4.16.160 the construction statute of repose was a "limitation[ ] prescribed in" chapter 4.16 RCW and thus a limitation on actions brought in the name of or for the benefit of the State.[2] 103 Wn.2d at 121 (emphasis omitted). In this broad sense of "limitation," the court determined that RCW 4.16.310 was a limitation. The court accordingly held that the statute of repose set forth in RCW 4.16.310 did not

---

[2] RCW 4.16.160 contains the proviso that there is "no limitation to actions brought in the name or for the benefit of the state, and no claim of right predicated on the lapse of time shall ever be asserted against the state." This is the statute we applied to this litigation in *PFD* I, 165 Wn.2d 679, to hold that the statute of limitations does not bar suit because the action was brought for the benefit of the state.

apply to actions brought in the name of or for the benefit of the State.

¶22 The legislature quickly responded to this holding. As part of the Tort Reform Act of 1986 the legislature amended RCW 4.16.160 and RCW 4.16.310 to expressly provide that the State is subject to the construction statute of repose. These amendments effectively overturned *Brazier Construction*. Hunt Kiewit maintains these amendments and their underlying public policy show that the time-of-accrual provision in Section 13.7 is against public policy because under it the statute of repose would never apply to bar a claim arising from acts or omissions occurring prior to substantial completion.

¶23 The amendments were designed to permit a statute of repose defense in actions brought by the State. More generally, the purposes of the 1986 tort reform enactments, of which the amendments were a part, were to "create a more equitable distribution of the cost and risk of injury and increase the availability and affordability of insurance." LAWS OF 1986, ch. 305, § 100. The legislative findings showed these concerns had arisen in *both* the public and private sectors. *Id.*

¶24 We do not believe that the public policies furthered by the amendments preclude contractual agreements like the one at issue. Where parties agree to set the time of accrual, as here, they have agreed to alter, to some degree, statutory allocation of risks. Just as contractual modifications of the statute of limitations can vary the effect of policies underscoring particular limitations periods and still be given effect in the individual case, so can modifications that affect application of statutes of repose. This type of agreement has long been allowed. The policies embodied in the amendments are still effective as the law of the State, notwithstanding such individualized contractual agreements.

¶25 We conclude that by its plain language, Section 13.7 provides that for causes of action based on acts or omissions

occurring prior to substantial completion, accrual for statute of repose purposes occurs not later than the date of substantial completion. Accordingly, the statute of repose does not bar PFD's claims against Hunt Kiewit.

¶26 We have already held that the statute of limitations does not bar PFD's suit. *PFD* I, 165 Wn.2d 679. Therefore, neither the statute of limitations nor the statute of repose bars suit against Hunt Kiewit. Summary judgment in Hunt Kiewit's favor on the basis of the statute of repose was error.

## RCW 4.16.326(1)(g)

¶27 Hunt Kiewit argues that the trial court's grant of summary judgment of dismissal should also be upheld under RCW 4.16.326(1)(g). This statute excuses a contractor "from any obligation, damage, loss, or liability for those defined activities [set forth in RCW 4.16.300] under the principles of comparative fault . . . (g) [t]o the extent that . . . an actionable cause as set forth in RCW 4.16.300 is not filed within the applicable statute of limitations." RCW 4.16-.326(1). The statute also says that in contract actions, the statute of limitations will expire without regard to discovery. RCW 4.16.326(1)(g). This statutory provision is an affirmative defense that prevents application of a discovery rule for claims of breach of written construction contracts. *1000 Virginia*, 158 Wn.2d at 582.

¶28 Although we question whether this affirmative defense could apply when no statute of limitations applies because of the exemption when claims are brought in the name of or for the benefit of the State, we find RCW 4.16.326(1)(g) inapplicable for another reason. Under Section 13.7, PFD's claims accrued no later than the date of substantial completion, which the parties agree was July 1, 1999. RCW 4.16.326(1)(g) does not apply retroactively to claims that accrued prior to the effective date of the statute on July 27, 2003. *Cambridge Townhomes*, 166 Wn.2d at 486. Because application of the statutory provision here would be retroactive, it does not apply.

## 21-Day Notice Clause

¶29 Hunt Kiewit next argues that PFD waived any claim by failing to provide notice pursuant to Section 4.3.3 of the construction contract. This section requires parties to provide notice of any claim "within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes, or a reasonable contractor exercising normal prudence and judgment should have recognized, the condition giving rise to the Claim." CP at 118, ¶ 4.3.3.

¶30 However, in 1998, PFD and Hunt Kiewit agreed to modify the contract and replace the 21-day requirement of Section 4.3.3 with a provision stating that "[c]laims made by either party must be made pursuant to the Claim Call process outlined in subparagraph 9.6.7 of the General Conditions and in the First Modification." CP at 991, ¶ 4.3.3. Subparagraph 9.6.7 describes claims procedures that must be followed during construction.[3] Under these procedures, PFD could waive claims during construction only by delivering a progress payment more than 20 days after receiving notice of events giving rise to a claim. But postconstruction, "[t]he making of final payment shall constitute a waiver of Claims by the Owner except those arising from . . . failure of the Work to comply with the requirements of the Contract Documents." CP at 991, ¶ 4.3.5.

---

[3] Modified subparagraph 9.6.7 addressed "Owner's Claims":

.3 **Owner's Claims.** On a monthly basis beginning as of the date of the execution of this First Modification, the Owner will include with each month's progress payment a statement of any Owner Claims, including any claim of Owner that Contractor, by reason of its sole neglect, fault or negligence, bears responsibility for a Subcontractor Claim such that Contractor will not be reimbursed as a Cost of the Work or other cost of Contractor's performance or will not receive an adjustment to the Preliminary MACC if such Subcontractor Claim is determined to be valid. Owner's delivery of a progress payment shall constitute a waiver of Owner's Claims arising from events of which it has received notice twenty (20) days or more prior to the date of delivery of the progress payment.

CP at 1016.

By making final payment, PFD waived all claims after construction except the claims that arose from failure of the general contractor or subcontractors to comply with the contract requirements. Here, the claims come within the postconstruction procedures.

¶31 PFD did not waive claims through failure to comply with the prime contract's claims procedures.

## Flow-Down Provisions; Incorporation by Reference

■■■ ¶32 The trial court granted summary judgment dismissing the third party claims of general contractor Hunt Kiewit against subcontractors Herrick and Long. Whether these claims survive depends on what the subcontracts say and therefore is a matter of contract interpretation. Contract interpretation is a question of law for the court when it is unnecessary to rely on extrinsic evidence. *In re Marriage of Bernard*, 165 Wn.2d 895, 902, 204 P.3d 907 (2009); *Marshall v. Thurston County*, 165 Wn. App. 346, 351, 267 P.3d 491 (2011).

¶33 The issue is whether subcontracts provide that Hunt Kiewit may assert third party claims against the subcontractors to the extent that Hunt Kiewit is liable for defective materials and work of the subcontractors. Our review on this grant of summary judgment concerns whether Hunt Kiewit's third party claims against the subcontractors are barred by the statute of repose. We acknowledge that the subcontractors assert other grounds for summary judgment but limit review to the matter of the statute of repose and, in a related vein, the statute of limitations. Any arguments raising other grounds for summary judgment should be made to the trial court.

■■ ■■ ¶34 The subcontracts incorporate by reference the prime contract documents. In general, "[i]f the parties to a contract clearly and unequivocally incorporate by reference into their contract some other document, that document becomes part of their contract." *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 801, 225 P.3d 213 (2009);

*Santos v. Sinclair*, 76 Wn. App. 320, 325, 884 P.2d 941 (1994). Incorporation by reference and flow-down provisions in prime contracts that bind subcontractors are enforced by courts "in a wide variety of contexts." 1 G. CHRISTIAN ROUX, CONSTRUCTION CONTRACTS DESKBOOK § 20:2 (2012) (accessed on Westlaw; database updated May 2012). Here, the "flow-down" provisions in the subcontracts plainly provide that if Hunt Kiewit is liable to PFD because of the subcontractors' defective workmanship or materials, then the subcontractors are liable to Hunt Kiewit to the same extent.

¶35 The subcontracts provide by reference that all of the prime contract documents are to be considered a part of the subcontracts and the subcontractors agreed to be bound by them "so far as they apply" to the subcontractor's "Work hereinafter described." CP at 521, 1789. The "prime contract" is defined to include "all the *general, supplementary* and *special conditions* . . . and *all other documents* forming or by reference made a part of the [prime] contract." *Id.* (emphasis added). The subcontracts also provide that "the Subcontractor assumes toward the Contractor all obligations and responsibilities that the Contractor assumes toward the Owner and others, as set forth in the Prime Contract, insofar as applicable, generally *or specifically*, to Subcontractor's Work." CP at 525, 1804 (Section 11(f)) (emphasis added). In addition, the subcontracts provide that

> the Subcontractor warrants and guarantees the Work covered by this Subcontract and agrees to make good, at its own expense, any defect in materials or workmanship which may occur or develop prior to the Contractor's release from responsibility to the Owner therefor.

*Id.* at 1804 (Section 11(e)).[4]

---

[4] The prime contract required that such provisions be included in the subcontracts:

**5.3.1** By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the

¶36 The references to the subcontractor's work do not mean that the clauses incorporate only those provisions in the prime contract that pertain to *performance* of the work. By their express language, the flow-down provisions are not limited to performance of the work. Rather, incorporating all of the prime contract's provisions "so far as they apply" and "insofar as applicable, generally or specifically" to the subcontractor's work means that provisions in the prime contract are incorporated if, but only if, they pertain to the subcontractor's work—the subcontractor's portion of the total construction project. Here, the claims are based on the subcontractors' alleged defective work or materials in connection with installing steel components and preparing, priming, and coating steel beams and columns. Provisions in the general contract that concern how and when claims may be asserted that arise from this part of the construction project pertain to the subcontractors' portion of the work and therefore are incorporated into the subcontract.

¶37 In *Western Washington Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.*, 102 Wn. App. 488, 492, 7 P.3d 861 (2000), a contract between the subcontractor and general contractor provided that the subcontractor was " 'to perform the Work . . . in accordance with the Project Contract Documents,' " and agreed " 'to perform and complete such Work in accordance with Contract Documents.' " (Alteration in original.) The Court of Appeals concluded that the contract clearly and unequivocally incorporated these documents. *Id.* at 495.

¶38 The contracts here are even clearer about what is incorporated and plainly extend to provisions in the

---

Contract Documents, and to assume toward the Contractor all the obligations and responsibilities which the Contractor, by these Documents, assumes toward the Owner and Architect.

CP at 127. Hunt Kiewit complied with this requirement, including flow-down and incorporation provisions in the subcontracts.

incorporated documents governing procedural matters. As noted, Section 11(f) in the subcontracts states that the subcontractor assumes the same obligations and responsibilities toward the general contractor that the general contractor assumes to the owner "as set forth in the Prime Contract, insofar as applicable, generally or specifically, to" the subcontractor's work. In addition, the subcontracts specifically provide that the "Prime Contract documents shall be considered a part of the Subcontract by reference thereto" and the subcontractors agreed to be bound to Hunt Kiewit "by the terms and provisions" of the prime contract "so far as they apply to the" work under the subcontracts. CP at 521, 525, 1789, 1804. These provisions clearly and unequivocally incorporate by reference provisions in the prime contract, including the limitation and accrual provision in the prime contract.

¶39 The subcontractors argue, however, that before any procedural terms in the prime contract apply (in particular the "limitations and accrual" provision in Section 13.7 of the prime contract), the flow-down provisions must contain specific "rights and remedies" language. They urge that express language is required before the general contractor has contractual recourse against the subcontractors and the necessary language is not found in their subcontracts.

¶40 However, the cases upon which they rely do not compel the result they seek. For example, in *Topro Services, Inc. v. McCarthy Western Contractors, Inc.*, 827 F. Supp. 666, 667 (D. Colo. 1993), unlike in the present case, the contract expressly limited the flow-down provision to *work performance* only. The provision at issue stated that the " 'Subcontractor . . . binds itself to [the general contractor] for the *performance of Subcontractor's Work* in the same manner as [the general contractor] is bound to the Owner for such performance under [the general contractor] contract with the Owner.' " *Id.* (emphasis added) (quoting contract). The court said that the "plain meaning" of the language required the subcontractor "to adhere to same

performance requirements as" the general contractor had to meet. *Id.* at 668. The court in *Topro* thus construed the contract according to the language used. The flow-down provisions in the subcontracts at issue before us do not involve the limited reference to only "performance" of the work that was in the contract in *Topro*.

¶41 In *Mountain States Construction Co. v. Tyee Electric, Inc.*, 43 Wn. App. 542, 718 P.2d 823 (1986), the flow-down provision purported to bind the electrical subcontractor to assume to the general contractor " *'all* obligations and responsibilities which the [general contractor] has assumed toward' " the owner under the prime contract for a waste-water treatment plant. *Id.* at 544 (quoting subcontract). The question whether this required the subcontractor to obtain certain liability insurance as required by the prime contract had to be answered no because a literal interpretation of the plain language used would mean that the subcontractor would be responsible for *all* of the work under the prime contract, despite the fact that the subcontractor performed only a limited part of the work on the project.

¶42 *Mountain States* does not indicate that flow-down provisions have to be read more narrowly when subcontractors' work is more limited than the whole project contracted for by the general contractor, and the Court of Appeals did not apply any special rule of narrow contract interpretation. Rather, applying generally applicable contract interpretation principles, the Court of Appeals held in *Mountain States* that contract terms will not be construed as written if the result cannot possibly have been intended by either party. *Id.* at 546. Since the provision obviously could not have been intended to mean what it said, that the subcontractor was responsible for all the work on the entire project and not just the work for which the subcontractor was hired, the court did not give it effect as written.

¶43 *Mountain States* shows that flow-down provisions that purport to require a subcontractor to assume "all of" the obligations that the general contractor assumes to the

owner, when the subcontractor is responsible for only a part of the project, cannot be enforced as written. The subcontracts here bind the subcontractors only to the extent that the provisions in the general contract are applicable to their part of the work.

¶44 In short, the flow-down provisions in the subcontracts in the present case do not contain language that limits the provisions that flow down from the prime contract to include only the "performance" of the subcontractor's work. Neither do the flow-down provisions contain language that purports to bind the subcontractors to "all" the same obligations of the general contractor to the owner. The language used here avoids the pitfalls that follow from use of both types of language and instead incorporates only provisions in the prime contract that can be applied to the subcontractors' work. The flow-down provisions at issue readily include clauses in the prime contract that address procedures applicable to the subcontractors' work.

¶45 As Hunt Kiewit maintains, the incorporation of the prime contract documents is more akin to that in *Sime Construction Co. v. Washington Public Power Supply System*, 28 Wn. App. 10, 621 P.2d 1299 (1980). There, a second-tier subcontract incorporated by reference, without qualification, the terms of the prime contract: " 'Subcontract documents include [the following] listed items, all of which are incorporated herein . . . . 1. The Contract between the Owner and the Contractor . . . and the conditions thereof (general, supplementary and other conditions).' " *Id.* at 14 (quoting sub-subcontract). The prime contract contained a provision for changes in the work that required the contractor to provide timely notice of any claim for additional compensation as a result of change orders.

¶46 Changes made to the architectural drawings led to late delivery of the revised drawings, which disrupted the sequence of the work performed by the sub-subcontractor. The sub-subcontractor submitted a claim for damages due to late delivery of the changed drawings but failed to

provide notice as required in the prime contract. The sub-subcontractor argued that the notice procedure had not been incorporated into its contract.

¶47 The Court of Appeals disagreed, rejecting cases relied on by the sub-subcontractor because in them incorporation was for a special purpose. But in the case at hand, the Court of Appeals determined, the incorporation clause was general and unlimited, and both contract specifications and procedural provisions of the prime contract were incorporated by reference. *Id.* at 15-16.

¶48 The subcontractors here also rely on cases that do in fact apply a stricter standard for construing flow-down provisions. However, the cases relied upon, including *3A Industries, Inc. v. Turner Construction Co.*, 71 Wn. App. 407, 869 P.2d 65 (1993), and *H.W. Caldwell & Son, Inc. v. United States for Use & Benefit of John H. Moon & Sons, Inc.*, 407 F.2d 21 (5th Cir. 1969), involve the issue whether the claimed incorporation would limit a *subcontractor*'s right to sue on a payment or performance bond under the federal "Miller Act" or the state "Little Miller Act." *H.W. Caldwell* was decided under the federal Miller Act, former 40 U.S.C. §§ 270a-270d-1 (2002),[5] and *3A Industries* involved the Washington State "Little Miller Act," chapter 39.08 RCW. There are no such claims before us, however.

¶49 The "purpose of the [Miller acts] is to provide security for those who furnish labor and material in the performance of government contracts." *Fanderlik-Locke Co. v. United States*, 285 F.2d 939, 942 (10th Cir. 1960). If the general contractor defaults, materialmen and laborers may sue on the payment bond. *See* former 40 U.S.C. § 270b.[6] As the Court of Appeals noted in *3A Industries*, "[l]ike the Federal Miller Act," the state act "requires contractors to obtain bonds on public works projects for the protection of laborers and materialmen" because on these projects mechanics' and

---

[5] Now codified at 40 U.S.C. §§ 3131-3133.

[6] Now codified at 40 U.S.C. § 3133(b).

materialmens' liens are not available.[7] 71 Wn. App. at 411. Under both the federal Miller Act and state "Little Miller Act," if contractual dispute resolution provisions are found to be incorporated into the subcontract, depending on what they say the result could be that the subcontractor has surrendered the right to the benefit of the statutory provisions protecting the subcontractor. *Fanderlik-Locke*, 285 F.2d at 942. Accordingly, "the courts do not favor finding that a subcontractor has contractually abandoned his rights under the [Miller] act." *H.W. Caldwell*, 407 F.2d at 23.

¶50 In *J.S. & H. Construction Co. v. Richmond County Hospital Authority*, 473 F.2d 212 (5th Cir. 1973), the subcontractor sued the general contractor and the owner for work and materials used on the project. The case appears to be a "Little Miller Act" case.[8] The court said the issue was "whether the Miller Act cases create a special rule or exception which prevents incorporation of an arbitration provision by general reference" in a subcontract. *Id.* at 215. The court noted that "the principal basis for judicial skepticism toward incorporation by general reference of the prime contract 'disputes clause' has been awareness of the vulnerable position in which the disputes clause would place the subcontractor and of Congress's intent to protect the subcontractor by establishing specific statutory rights." *Id.* (footnote omitted). The court observed that in the Miller Act cases general contractors had argued that disputes clauses required the subcontractors to be bound by the result of administrative dealings between the owner and

---

[7] Under the Washington public contracts bond statute, a general contractor must furnish a bond to the state, county, municipality, or other public body conditioned on the payment of all laborers, mechanics, subcontractors, and material suppliers, and the statute provides such persons "a right of action in his, her, or their own name or names on such bond for work done." RCW 39.08.010, .030(1); *see generally* 27 MARJORIE DICK ROMBAUER, WASHINGTON PRACTICE: CREDITORS' REMEDIES—DEBTORS' RELIEF § 4.87 (Sept. 2012).

[8] The court observed that the subcontractor said that the payment bond was required by Georgia state law and assumed this was a reference to the state's "Little Miller Act." *See J.S. & H.*, 473 F.2d at 215 n.8.

the prime contractor that were relevant to the subcontractor's claim, but courts had recognized that this arrangement "would amount to a virtual forfeiture of the subcontractor's Miller Act rights." *Id.* at 216.

¶51 In *3A Industries*, the question was whether an arbitration clause in the prime contract was incorporated by reference into the subcontract to require the subcontractor to arbitrate disputes on the bond for a public works project, a prison inmate housing project, on which the subcontractor had worked to install precast wall units. A dispute about payment for the subcontractor's work arose, and the subcontractor sued the general contractor; the subcontractor's surety; and the owner, the State of Washington. The general contractor and its surety argued that the arbitration clause in the general contract had been incorporated, while the subcontractor contended that absent an express provision in the subcontract making the arbitration clause applicable, the court should not hold that it had abandoned its right of action on the bond as provided by this state's "Little Miller Act."

¶52 The Court of Appeals noted that unlike general terms referred to in some disputes-clause cases, the subcontract before it specifically provided that the general contractor would have the same remedies against the subcontractor as the owner had against the general contractor. *3A Indus.*, 71 Wn. App. at 418. The court found this more specific language sufficiently incorporated the arbitration clause. The court also explained that incorporation of the arbitration clause did not disadvantage the subcontractor to the same degree as administrative dispute resolution procedures would, because arbitration contemplated the participation of the prime and subcontractors, allowing for the subcontractor to protect its interests, and also noted that the award could be subject to judicial review. *Id.* at 416-17.

¶53 In cases involving administrative claims dispute resolution, as in *Fanderlik-Locke*, the effect of the disputes clause claimed to be incorporated would bind the subcon-

tractor to exhaust administrative remedies before maintaining an action under the Miller Act. In *H.W. Caldwell*, the incorporated clauses would have effectively required the general contractor to present the subcontractor's claim in administrative proceedings. In these cases, the stricter standard for incorporation was required.

¶54 In short, in cases where a subcontractor seeks relief from the general contractor, finding incorporation into the subcontract of a disputes clause in the prime contract could have the result of the subcontractor relinquishing rights, usually under the Miller Act or a state's Little Miller Act. Therefore, in cases where this could be the result of incorporation, courts have found incorporation of disputes clauses in the prime contract only where there is "a provision in the contract between the sub and the prime making the 'disputes' clause expressly applicable." *H.W. Caldwell*, 407 F.2d at 23.

¶55 But unlike in these cases, the present case does not involve suit by the subcontractors at all. Moreover, it is also important that the key provision at issue here is a contractual definition of time of accrual of a cause of action, not a procedure for how disputes are to be resolved (which are set out elsewhere in the subcontracts). Defining the time of accrual of causes of action with respect to substantial completion of the project does not present the same concern as in the Miller Act and Little Miller Act cases, where resolution of disputes clauses in the prime contract could result in forfeiture of the subcontractor's rights. There is no conflict with our state's Little Miller Act and no reason to apply the stricter standard for incorporation before Hunt Kiewit can pursue its third party claims.

¶56 We hold that subcontracts provide that the subcontractors may be liable to the extent that the "limitations and accrual" provision in the prime contract leads to liability on the part of the general contractor. This follows from (a) the "flow-down" provisions in the subcontracts stating that the subcontractors assume the same obligations and

responsibilities to the general contractor that the general contractor assumes to the owner and (b) the provisions that incorporate the applicable parts of the prime contract into the subcontracts. Of course, liability has not yet been established and, at this point in the proceedings, all that is at issue is whether the trial court correctly dismissed the defendant and third party defendants on the basis of the statute of repose.

¶57 Next, on the matter of the subcontractor's obligations and responsibilities, there is no merit to Long's contention that Section 14 of its subcontract's supplemental conditions supersedes Section 11(e). As noted, Section 11(e) states that the subcontractor "warrants and guarantees the Work covered by this Subcontract and agrees to make good, at its own expense, any defect in materials or workmanship which may occur or develop prior to the Contractor's release from responsibility to the Owner therefor." CP at 525. The part of Section 14 that Long quotes sets out the subcontractor's agreement "to make good on any warranty for the term of this Agreement plus one year . . . or for a period coextensive with any warranty from" the general contractor to the owner. CP at 536. However, as Hunt Kiewit points out, Long fails to set out other language in Section 14 that adds that its warranties and requirements "are in addition to those required elsewhere in the Contract Documents." *Id.* Section 14 does not supersede Section 11(e) as Long claims, but adds to it.

Whether Summary Judgment Was Properly Granted to Subcontractors Herrick and Long on Ground That the Statute of Repose Bars Third Party Suit

¶58 The last question that requires resolution is whether the statute of repose bars suit against the subcontractors and therefore summary judgment on repose grounds in their favor was proper. The trial court's decision was based on its ruling that the statute of repose bars suit against Hunt Kiewit, and this bar flows down to the

subcontractors. Because that ruling was in error and the statute of repose does not apply in light of the time-of-accrual provision in the prime contract, which is incorporated into the subcontracts, it follows that Hunt Kiewit's claims against the subcontractors should not have been dismissed on statute of repose grounds either.

¶59 The accrual provision in Section 13.7 applies to the subcontractors because it was clearly and unequivocally incorporated by reference into the subcontracts. Section 13.7 is a "provision" that plainly can "apply" to the work performed by the subcontractors; i.e., "so far as" Section 13.7 "appl[ies] to the [subcontractor's] Work," it is incorporated—and Section 13.7 clearly can be applied to govern accrual of a cause of action (and commencement of the limitations period) arising from the subcontractors' work. CP at 521, 525, 1789, 1804 (Section 11(f)).

¶60 Moreover, to carry out the parties' intent that the obligations and responsibilities of the subcontractors to the general contractor exist to the same extent as the obligations and responsibilities of the general contractor to the owner, it is necessary to apply the same rules that govern under the prime contract. Unless the same accrual provision is applied to both the general contractor and the subcontractor with respect to the subcontractors' work, the subcontractors' obligations and responsibilities to the general contractor are not the same as the general contractor's to the owner. To approve a situation where Section 13.7 is selectively applied in a way that the general contractor is liable, but the subcontractor is not, is diametrically opposed to the clear intent of the parties that the subcontractors have the same responsibilities and obligations to the general contractor as the general contractor has to the owner.

¶61 It follows then that because there is no statute of limitations' bar to suit against the general contractor, there is no "applicable statute of limitations" as this term is used in Section 13.7. Accordingly, no limitations period bars the

general contractor's suit against the subcontractors, either.[9] In addition, the subcontractors agreed to "make good" at their "own expense . . . any defect in materials or workmanship which may occur or develop prior to" Hunt Kiewit's "release from responsibility to" PFD. CP at 525, 1804 (Section 11(e)). This provision is highly significant. The clause necessarily contemplates that a procedural rule in the prime contract that could control whether Hunt Kiewit would be responsible to the owner for the subcontractors' defective work or material, i.e., exposed to liability, must also control with regard to whether the subcontractors might remain responsible to Hunt Kiewit for the defective work or materials. If this were not true, the promise made by the subcontractors could be rendered meaningless.

¶62 We hold that the statute of repose does not apply to the subcontractors. The incorporation and flow-down provisions in the subcontracts bind subcontractors Herrick and Long to the same responsibilities and obligations to Hunt Kiewit that Hunt Kiewit assumes to the owner, PFD.

## CONCLUSION

¶63 The parties to the relevant contracts prepared for the possibility of the owner suing the general contractor on claims arising out of the subcontractors' defective workmanship or materials and included contractual provisions that allow the general contractor recourse against its subcontractors in such circumstances. Had they not done so, the result would have been that the general contractor would have to absorb the cost of any losses caused by its subcontractors. The contracts show that this is not what the parties intended.

¶64 We conclude that Hunt Kiewit's claim that the statute of repose bars suit against it is incorrect. Under the time-of-accrual provision in Section 13.7 of the prime con-

---

[9] This is not to say that other theories may not apply, depending upon the circumstances in a given case.

tract, PFD's cause of action accrued no later than substantial completion. Accordingly, the statute of repose does not bar PFD's suit.

¶65 Neither RCW 4.16.326(1)(g) nor the claims procedures under the prime contract require that summary judgment dismissing PFD's claims against Hunt Kiewit be upheld.

¶66 Hunt Kiewit's third party claims against subcontractors Herrick and Long are not barred by the statute of repose. Under the flow-down and incorporation-by-reference provisions in the subcontracts, the subcontractors have the same obligations and responsibilities to the general contractor as the general contractor has to the owner. We have already held that the statute of limitations does not apply to bar PFD's suit. Given that PFD's suit against Hunt Kiewit is not barred by either the statute of repose or the statute of limitations, and Hunt Kiewit is still exposed to liability arising from any defective workmanship or materials attributable to Herrick and Long, these subcontractors are not entitled to dismissal on summary judgment.

¶67 We reverse the trial court's grants of summary judgment in the entirety and remand this case for further proceedings.

C. JOHNSON, OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, WIGGINS, and GONZÁLEZ, JJ., and CHAMBERS, J. PRO TEM., concur.